IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

---------------------------------------------------------------- x

In re:                                          :      Chapter 11
                                                :
REMINGTON OUTDOOR COMPANY, INC., *et*           :      Case No. 18-10684 (__)
*al.*,[1]                                       :
                                                :      (Joint Administration Requested)
                                                :
                        Debtors.                :
---------------------------------------------------------------- x

**DEBTORS' MOTION FOR ENTRY OF INTERIM AND FINAL ORDERS
(I) AUTHORIZING THE DEBTORS TO PAY CERTAIN PREPETITION
CLAIMS IN THE ORDINARY COURSE OF BUSINESS, (II)
AUTHORIZING BANKS TO HONOR AND PROCESS CHECKS AND
ELECTRONIC TRANSFER REQUESTS RELATED THERETO,
(III) REQUIRING CREDITORS TO MAINTAIN CUSTOMARY
TERMS AS A CONDITION TO PAYMENT, AND (IV)
<u>SCHEDULING A FINAL HEARING</u>**

Remington Outdoor Company, Inc. and its affiliated debtors, as debtors and debtors-in-possession (collectively, the "<u>Debtors</u>") in the above-captioned chapter 11 cases (the "<u>Chapter 11 Cases</u>"), hereby file this motion (the "<u>Motion</u>") seeking entry of interim and final orders, pursuant to sections 105(a) and 363(b) of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (as amended, the "<u>Bankruptcy Code</u>"), rules 6003 and 6004 of the Federal Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>"), and rule 9013-1(m) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "<u>Local Rules</u>"), substantially in the forms attached hereto as **Exhibit A** and

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are: Remington Outdoor Company, Inc. (4491); FGI Holding Company, LLC (9899); FGI Operating Company, LLC (9774); Remington Arms Company, LLC (0935); Barnes Bullets, LLC (8510); TMRI, Inc. (3522); RA Brands, L.L.C. (1477); FGI Finance, Inc. (0109); Remington Arms Distribution Company, LLC (4655); Huntsville Holdings LLC (3525); 32E Productions, LLC (2381); Great Outdoors Holdco, LLC (7744); and Outdoor Services, LLC (2405). The principal offices of Debtor Remington Outdoor Company Inc., the top-level holding company, are located at 870 Remington Drive, Madison, NC 27025..

1

**Exhibit B**, (i) authorizing the Debtors, in their sole discretion, to pay the liquidated, noncontingent, and undisputed prepetition claims of third-party creditors who will be treated as unimpaired for purposes of the Plan (as defined below), including trade vendors, suppliers, common carriers, and service providers, as they come due in the ordinary course of business; (ii) authorizing banks and other financial institutions to honor and process checks and electronic transfer requests related to the foregoing; (iii) requiring creditors, as a condition to payment, to maintain or apply contractual terms during the pendency of these Chapter 11 Cases that are at least as favorable as those terms existing as of the Petition Date (as defined below); (iv) scheduling a final hearing; and (v) granting certain related relief, as described more fully herein. In further support of this Motion, the Debtors respectfully state as follows:

### Jurisdiction

1.      This court (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2), and the Court may enter a final order consistent with Article III of the United States Constitution. The Debtors confirm their consent pursuant to Rule 9013-1(f) of the Local Rules to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

2.      Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

### Background

3.      On March 25, 2018 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  The Debtors continue to operate their businesses as debtors and debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No party has requested the appointment of a trustee or examiner and no

committee has been appointed or designated in these Chapter 11 Cases. The Debtors' request for joint administration of these Chapter 11 Cases for procedural purposes only is currently pending.

4.      The Debtors are one of America's oldest and largest manufacturers of firearms, ammunition and related products for commercial, military, and law enforcement customers throughout the world. The Debtors employ approximately 2,700 full-time employees and operate seven manufacturing facilities located across the United States. The Debtors' principal headquarters are located in Madison, North Carolina.

5.      Prior to the Petition Date, the Debtors and a majority in principal amount of each of the Debtors' term loan lenders and third lien noteholders entered into a restructuring support agreement (the "RSA") which set forth the terms of a comprehensive balance sheet restructuring of the Debtors to be implemented through a joint prepackaged chapter 11 plan of reorganization (the "Plan"). The Plan provides for the elimination of approximately $620 million of the Debtors' prepetition funded debt obligations in exchange for the reorganized Debtors' new equity and certain other consideration. In addition, the Plan provides that substantially all other claims against the Debtors, including all general unsecured claims, will either be paid in full in the ordinary course or otherwise be unimpaired. The Plan thus will enable the Debtors to emerge with a significantly deleveraged capital structure and to obtain the liquidity necessary to operate the Debtors' businesses for the long-term future.

6.      The Debtors commenced solicitation of the Plan prior to the Petition Date on March 22, 2018 and have filed the Plan and accompanying disclosure statement concurrently with the commencement of these Chapter 11 Cases. Pursuant to the milestones set forth in the RSA, the Debtors are seeking a joint hearing to consider approval of the disclosure statement and confirmation of the Plan on or around May 3, 2018.

3

7.     Additional information regarding the Debtors' businesses, assets, capital structure, and the circumstances leading to the filing of these Chapter 11 Cases is set forth in the Declaration of Stephen P. Jackson Jr. in Support of Chapter 11 Petitions and First Day Pleadings of Remington Outdoor Company, Inc. and its Affiliated Debtors and Debtors in Possession (the "First Day Declaration"), which is being filed contemporaneously herewith and is incorporated by reference herein.

### Payable Claims

8.     In the ordinary course of their business, the Debtors incur numerous obligations to various creditors that provide the Debtors with a variety of resources and services that are necessary for the continued operation of the Debtors' firearms, ammunition and accessories business. These creditors, who will be treated as unimpaired for purposes of the Plan,[2] include, without limitation, trade vendors, suppliers, common carriers, and service providers (the "Prepetition Creditors").[3] The goods provided by the Prepetition Creditors include raw materials and parts specific to the Debtors' various products, such as brass, lead, propellant, steel, plastic, resin, wood, stocks, as well as other materials relating to components, stamping, injection molds, safety systems, machining, projectiles, packaging and finishing. The Prepetition Creditors also provide the Debtors with a variety of services in the ordinary course of business including, but not limited to, machining, shipping, warehousing, logistics, equipment maintenance and repairs,

---

[2]   The Debtors believe that a significant portion of the unimpaired claims outstanding as of the Petition Date are, and that substantially all of the Payable Claims constitute, General Unsecured Claims (as defined in the Plan). See Section IV.A of the Disclosure Statement, "Summary of Plan". Nonetheless, as described below, the relief sought herein is with respect to all Payable Claims, irrespective of any Payable Claim's actual or deemed classification under the Plan, so long as such Payable Claim's status as unimpaired and entitlement to payment in full in cash under the Plan is not in dispute – i.e., as an Administrative Expense, Priority Non-Tax Claim, Other Secured Claim, or General Unsecured Claim (each as defined in the Plan).

[3]   For the avoidance of doubt, the scope of this Motion and the relief requested herein does not apply to any prepetition claim for which the Debtors seek authority to pay pursuant to a separate "first-day" motion filed by the Debtors; such claims shall not be considered "Payable Claims" for purposes of this Motion.

property maintenance and repairs, and other basic necessities for the operation of the Debtors' business.

9. The Debtors estimate that, as of the Petition Date, the aggregate prepetition claims owed to the Prepetition Creditors total approximately $55 million (the "Payable Claims"), of which the Debtors estimate that approximately $48 million will come due during the first thirty days of these Chapter 11 Cases.[4] The Debtors believe that authorization to pay the Payable Claims is necessary in order to minimize disruption to the Debtors' operations and to ensure uninterrupted operations and to allow for a seamless transition through these Chapter 11 Cases, for the benefit of all parties in interest. Moreover, as described above, because of the broad consensus that was reached under the RSA and the support for the Plan, the Debtors are optimistic that the Plan will be confirmed within approximately fifty days of the Petition Date. Because the Payable Claims are unimpaired under the Plan, the relief requested herein would merely expedite the treatment and distribution to the Prepetition Creditors that they would otherwise be entitled to receive upon consummation of the Plan. Given the strong likelihood that holders of the Payable Claims will be paid in full anyway, the mere timing difference is, in the Debtors' business judgment, warranted in order to avoid the risk of deteriorating relationships with suppliers, vendors and others.

## Relief Requested

10. The Debtors seek entry of interim and final orders, substantially in the forms attached hereto as **Exhibit A** and **Exhibit B**, (i) authorizing the Debtors, in their sole discretion,

---

[4] The bulk of the $48 million in Payable Claims that is expected to come due during the next thirty days is comprised of outstanding invoices reflected in the Debtors' accounts payable. In addition, based on the Debtors' accruals, the Debtors anticipate that during the postpetition period they will receive additional invoices for goods, services and materials provided by Prepetition Creditors prior to the Petition Date. As some of those invoices may provide shorter terms and require payment within the next thirty days, the Debtors have included an estimate of the Payable Claims associated with those invoices in the $48 million amount.

to pay in full in cash the liquidated, noncontingent, and undisputed prepetition Payable Claims of the Prepetition Creditors who will be treated as unimpaired for purposes of the Plan, including trade vendors, suppliers, common carriers, and service providers, as they come due in the ordinary course of business;[5] (ii) authorizing banks and financial institutions to honor and process check and electronic transfer requests relating to the foregoing; (iii) requiring creditors, as a condition to payment, to maintain or apply contractual terms during the pendency of these Chapter 11 Cases that are at least as favorable as those terms existing as of the Petition Date; (iv) scheduling a final hearing; and (v) granting certain related relief.    On an interim basis, the Debtors seek authority to pay any amounts on account of the Payable Claims not to exceed $48 million.    On a final basis, the Debtors seek authority to pay any amounts on account of the Payable Claims not to exceed $55 million.

11.    The Debtors request that the Court authorize the Debtors to pay the Payable Claims on the condition that, by accepting payment, the Prepetition Creditor agrees to: (i) maintain or reinstate trade terms during the pendency of these Chapter 11 Cases that are at least as favorable as those existing on the Petition Date; or (ii) maintain such other terms satisfactory to the Debtors in their business judgment. The Debtors also propose that if a Prepetition Creditor, after receiving a payment on account of its Payable Claim, does not maintain or reinstate trade terms at least as favorable as those existing on the Petition Date during the pendency of these Chapter 11 Cases or does not maintain such other terms agreed to by the Debtors, then any payments of Payable Claims made to such Prepetition Creditor after the

---

[5]    Consistent with the RSA and the proposed Plan, all Payable Claims of the Debtors shall be paid by FGI Operating Company, LLC ("OpCo") during the course of the Chapter 11 Cases; provided, however, that if the Plan is not confirmed or consummated, OpCo reserves its right to assert a postpetition administrative expense intercompany claim against Remington Outdoor Company, Inc. ("ROC") for any Payable Claims paid by OpCo for which ROC is liable.

Petition Date may be, in the Debtors' discretion, either (i) deemed applied to postpetition amounts payable to such Prepetition Creditor or (ii) treated as an unauthorized postpetition transfer recoverable by the Debtors under section 549 of the Bankruptcy Code or other applicable law.

12.    In addition, the Debtors request that the Court authorize all applicable banks and other financial institutions to honor and process checks or electronic fund transfers drawn on the Debtors' bank accounts (the "Bank Accounts") to pay prepetition obligations described herein, whether such checks or other requests were submitted prior to, on, or after, the Petition Date, provided that sufficient funds are available in the applicable bank accounts to make such payments.  The Debtors further request that all applicable banks and other financial institutions be authorized to rely on the Debtors' designation of any particular check or electronic payment request as approved pursuant to this Motion.

### Basis for Relief

I.    **Payment of Payable Obligations Due in Ordinary Course Is Appropriate Exercise of Business Judgment**

13.    The Court may authorize the Debtors' payment of the Payable Claims pursuant to section 363(b) of the Bankruptcy Code.  Section 363(b)(1) authorizes courts, after notice and hearing, to permit a debtor to "use, sell, or lease, other than in the ordinary course of business, property of the estate."  11 U.S.C. § 363(b)(1); see also In re Ionosphere Clubs, Inc., 98 B.R, 174, 175 (Bankr. S.D.N.Y. 1989) (finding that a sound business justification existed to pay prepetition wages and stating, "Section 363(b) gives the court broad flexibility in tailoring its orders to meet a wide variety of circumstances"); Armstrong World Indus., Inc. v. James A. Phillips, Inc. (In re James A. Phillips, Inc.), 29 B.R. 391, 397 (S.D.N.Y. 1983) (relying upon section 363 as a basis to allow a contractor to pay the prepetition claims of suppliers who were

potential lien claimants). For a court to apply section 363(b), the debtor must "articulate some business justification, other than mere appeasement of major creditors . . . ." Ionosphere Clubs, 98 B.R. at 175 (ruling that debtor's payment of prepetition claims was necessary to protect its business and to ensure successful reorganization). In this case, the relief sought is vital for the Debtors' successful reorganization. If the Debtors cannot pay the Prepetition Creditors, the negative impact would be almost immediate. Certain of the Prepetition Creditors, on whom the Debtors' businesses depend, would immediately withdraw services and cease to provide necessary resources. Such an occurrence would impair a successful reorganization and hamper viability following the Debtors' emergence from chapter 11.

14. Additionally, section 105(a) of the Bankruptcy Code empowers the Court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). A bankruptcy court's use of its equitable powers to "authorize the payment of prepetition debt when such payment is needed to facilitate the rehabilitation of the debtor is not a novel concept." Ionosphere Clubs, 98 B.R at 175. "Under 11 U.S.C. §105, the court can permit pre-plan payment of a pre-petition obligation when essential to the continued operation of the debtor." In re NVR L.P., 147 B.R. 126, 127 (Bankr. E.D. Va. 1992) (citing Ionosphere Clubs, 98 B.R. at 177)). The uninterrupted supply of resources and services, on current trade terms, and the continuing support of their vendors, are imperative to the ongoing operations and viability of the Debtors.

15. The paramount goal of the parties in interest during these Chapter 11 Cases is protecting the value of the Debtors' business by preventing operational disruptions. The relief requested herein preserves the value of the Debtors' estates by (i) ensuring that the Debtors have access to the resources, goods and services that they need to continue operations and (ii) enabling

the Debtors to maintain good relationships with the Prepetition Creditors, all of which inures to the benefit of the reorganized Debtors when they emerge from chapter 11. Moreover, the Debtors do not seek authority to pay all Payable Claims immediately, but only to pay undisputed amounts that come due in the ordinary course of business on terms consistent with the Debtors' prepetition practice. Thus, the Debtors submit that the relief requested is narrowly tailored to and consistent with the paramount goal of chapter 11 – "facilitating the continued operation and rehabilitation of the debtor . . ." Ionosphere Clubs, 98 B.R. at 176.

16.    The Debtors further submit that payment of the Payable Claims is necessary and appropriate and may be authorized under sections 363(b) and 105(a) of the Bankruptcy Code pursuant to the "doctrine of necessity." See Friedman's Liquidating Tr. v. Roth Staffing Cos. L.P. (In re Friedman's Inc.), 738 F.3d 547, 560 (3d. Cir. 2013) (describing the policy of equal distribution among similarly situated creditors and noting, "'[c]ritical vendors,' like Roth Staffing, can similarly be given preferred treatment under Section 105 and Section 363.") The "doctrine of necessity" functions in a chapter 11 case as a mechanism by which the bankruptcy court can exercise its equitable power to allow payment of prepetition claims and further supports the relief requested herein. See In re Lehigh & New England Ry, Co., 657 F.2d 570, 581 (3d Cir. 1981) (holding that court may authorize payment of prepetition claims if such payment is essential to continued operation of debtor); Ionosphere Clubs, 98 B.R. at 176 (authorizing payment of prepetition employee wages and benefits while noting judicial power to "authorize a debtor in a reorganization case to pay prepetition claims where such payment is essential to the continued operation of the debtor"); see also In re Just for Feet, Inc., 242 B.R. 821, 824 (D. Del. 1999) (holding section 105(a) of Bankruptcy Code "provides a statutory basis for the payment of pre-petition claims" under doctrine of necessity and noting that Supreme

9

Court, United States Circuit Court of Appeals for the Third Circuit, and District Court of Delaware all accept authority of bankruptcy court "to authorize payment of pre-petition claims when such payment is necessary for the debtor's survival during chapter 11"); In re Columbia Gas Sys., Inc., 171 B.R. 189, 191-92 (Bankr. D. Del. 1994) (explaining that doctrine of necessity is standard in Third Circuit for enabling court to authorize payment of prepetition claims prior to confirmation of reorganization plan).

17.     So long as the Prepetition Creditors agree to continue supplying the Debtors postpetition under current trade terms, the Debtors will avoid unnecessary expense during these Chapter 11 Cases.  Current trade terms will help the Debtors maintain their liquidity and will facilitate their ability to sustain operations while reorganizing.  Such terms also allow the Debtors to avoid the inherent operational inefficiencies of paying cash on demand and managing billing processes for numerous vendors that might require cash in advance or shorten their trade terms to less than a week.  Accordingly, pursuant to sections 105(a) and 363(b) of the Bankruptcy Code, this Court is empowered to grant the relief requested herein.

18.     Paying the Payable Claims in the ordinary course of business renders a benefit to the Debtors' estates both monetarily and operationally by preserving liquidity and enabling the Debtors to operate smoothly during these Chapter 11 Cases.  Further, because the Payable Claims are unimpaired under the Plan, the relief requested simply provides the treatment the Payable Claims are entitled to under the Plan on an expedited timetable.  Because the Debtors hope to reorganize as efficiently as possible and minimize their duration in chapter 11, the Debtors believe that, under these circumstances, approval of the requested relief is appropriate and necessary.

19.    Courts in this district have routinely authorized payment of prepetition claims in the context of prepackaged and prearranged chapter 11 cases. See, e.g., In re Physiotherapy Holdings, Inc., No. 13-12965 (KG) (Bankr. D. Del. Nov. 14, 2013); In re Maxcom Telecomunicaciones, S.A.B. de C.V., No. 13-11839 (PJW) (Bankr. D. Del. July 25, 2013); In re Dex One Corp., No. 13-10533 (KG) (Bankr. D. Del. Mar. 19, 2013); In re Caribe Media Inc., No. 11-11387 (KG) (Bankr. D. Del. May 23, 2011); In re U.S. Concrete, Inc., No. 10-11407 (PJW) (Bankr. D. Del. May 21, 2010); In re Stallion Oilfield Servs. Ltd., No. 09-132562 (BLS) (Bankr. D. Del. Nov. 16, 2009).

20.    Given the prepackaged nature of these Chapter 11 Cases, the relief requested herein is appropriate inasmuch as such relief will enable the Debtors to move towards expeditious Plan confirmation with the least possible disruption or harm to their business. The Debtors submit that no parties in interest will be prejudiced by the relief requested herein, as the Payable Claims are limited to claims that are to be unimpaired under the Plan. The relief requested merely expedites the treatment and distribution that is afforded to Payable Claims under the Plan and protects the Debtors' business and preserves the value of the Debtors' estates. Based on the foregoing, the Debtors submit that the relief requested is necessary and appropriate, is in the best interests of their estates and creditors, and should be granted in all respects.

## II.    Court Should Authorize Banks to Honor and Pay Checks Issued and Electronic Funds Transferred to Prepetition Creditors

21.    The Debtors further request that the Court authorize and direct all banking institutions and all other applicable financial institutions to receive, process, honor and pay any and all checks drawn or electronic funds relating to the Payable Claims, whether such checks were presented prior to or after the Petition Date. Under the Debtors' existing cash management system, checks or wire transfer requests can be readily identified as relating to an authorized

payment of the Payable Claims. As such, the Debtors believe that checks or wire transfer requests, other than those relating to authorized payments, will not be honored inadvertently. The Debtors also seek authority to issue new postpetition checks or effect new electronic fund transfers, on account of the Payable Claims to replace any prepetition checks or electronic fund transfer requests that may be dishonored or rejected as a result of the commencement of the Debtors' Chapter 11 Cases. Finally, the Debtors submit that they have sufficient liquidity to pay such amounts as they become due in the ordinary course of the Debtors' business.

### Bankruptcy Rule 6003 Is Satisfied

22. Bankruptcy Rule 6003 empowers a court to grant relief within the first twenty-one (21) days after the Petition Date "to the extent that relief is necessary to avoid immediate and irreparable harm." Fed. R. Bankr. P. 6003(b). For reasons discussed above, authorizing the Debtors to pay the Payable Claims in the ordinary course of business, and granting the other relief requested herein is integral to the Debtors' ability to transition their operations into these Chapter 11 Cases. Failure to receive such authorization and other relief during the first twenty-one (21) days of these Chapter 11 Cases would severely disrupt the Debtors' operations at this critical juncture. For the reasons discussed herein, the relief requested is necessary for the Debtors to operate their businesses in the ordinary course and maximize the value of their estates for the benefit of all stakeholders. Accordingly, the Debtors submit that they have satisfied the "immediate and irreparable harm" standard of Bankruptcy Rule 6003 to support granting the relief requested herein.

### Reservation of Rights

23. Nothing contained herein is intended or should be construed as an admission as to the validity of any claim against the Debtors, a waiver of the Debtors' right to dispute any claim, or an approval or assumption of any agreement, contract, or lease under section 365 of the

12

Bankruptcy Code. The Debtors expressly reserves its right to contest any claim related to the relief sought herein. Likewise, if the Court grants the relief sought herein, any payment made pursuant to an order of the Court is not intended to be nor should it be construed as an admission as to the validity of any claim or a waiver of the Debtors' right to subsequently dispute such claim.

### Waiver of Bankruptcy Rule 6004(a) and (h)

24.    To implement the foregoing successfully, the Debtors request that the Court enter an order providing that notice of the relief requested herein satisfies Bankruptcy Rule 6004(a) and that the Debtors have established cause to exclude such relief from the 14-day stay period under Bankruptcy Rule 6004(h).

### Notice

25.    The Debtors will provide notice of this Motion to: (a) the Office of the United States Trustee for the District of Delaware; (b) the entities listed on the Consolidated List of Creditors Holding 30 Largest Unsecured Claims filed pursuant to Bankruptcy Rule 1007(d); (c) counsel to Bank of America, N.A., as administrative agent and co-collateral agent under the ABL Credit Agreement; (d) counsel to Ankura Trust Company, as the successor administrative agent under the Term Loan Agreement; (e) counsel to the Ad Hoc Group of Term Loan Lenders; (f) counsel to Wilmington Trust, National Association, as trustee under the Third Lien Notes Indenture; (g) counsel to the Ad Hoc Group of Third Lien Noteholders; (h) any banking or financial institution that holds the Debtors' accounts; and (i) all parties entitled to notice pursuant to Local Rule 9013-1(m). The Debtors submit that, in light of the nature of the relief requested and the urgency of the circumstances surrounding this Motion, no other or further notice need be given.

13

## No Prior Request

26.     No prior motion for the relief requested herein has been made to this or any other court.

WHEREFORE, the Debtors respectfully request entry of interim and final orders, substantially in the forms attached hereto as **Exhibit A** and **Exhibit B**, (i) authorizing the Debtors, in their sole discretion, to pay in full in cash the liquidated, noncontingent, and undisputed prepetition Payable Claims of the Prepetition Creditors who will be treated as unimpaired for purposes of the Plan, including trade vendors, suppliers, common carriers, and service providers, as they come due in the ordinary course of business; (ii) authorizing banks and financial institutions to honor and process check and electronic transfer requests relating to the foregoing; (iii) requiring Prepetition Creditors, as a condition to payment of the Payable Claims, to maintain or apply contractual terms during the pendency of these Chapter 11 Cases that are at least as favorable as those terms existing as of the Petition Date; (iv) scheduling a final hearing; and (v) granting certain related relief.


[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]

14

Dated: March 25, 2018
Wilmington, Delaware

Respectfully submitted,

**PACHULSKI STANG ZIEHL & JONES LLP**

Laura Davis Jones (DE Bar No. 2436)
Timothy P. Cairns (DE Bar No. 4228)
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, DE 19899-8705 (Courier 19801)
Telephone:     (302) 652-4100
Facsimile:     (302) 652-4400
Email:         ljones@pszjlaw.com
               tcairns@pszjlaw.com

-and-

**MILBANK, TWEED, HADLEY & McCLOY LLP**
Gregory A. Bray (*pro hac vice* admission pending)
Thomas R. Kreller (*pro hac vice* admission pending)
Haig M. Maghakian (*pro hac vice* admission pending)
2029 Century Park East, 33rd Floor
Los Angeles, CA 90067
Telephone:     (424) 386-4000
Facsimile:     (213) 629-5063
Email:         gbray@milbank.com
               tkreller@milbank.com
               hmaghakian@milbank.com

*Proposed Counsel to Debtors and Debtors in Possession*