### IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE DISTRICT OF DELAWARE

-------------------------------------------------------------- x

In re:                          :       Chapter 11

REMINGTON OUTDOOR COMPANY, INC., *et al.*,[1]           :       Case No. 18-10684 (BLS)

                                 :       (Jointly Administered)

                     Debtors.       :

-------------------------------------------------------------- x

## ORDER (A) APPROVING SOLICITATION PROCEDURES, (B) APPROVING ADEQUACY OF DISCLOSURE STATEMENT, AND (C) CONFIRMING PLAN

Remington Outdoor Company, Inc. and its affiliated debtors, as debtors and debtors-in-possession (collectively, the "Debtors") in the above-captioned chapter 11 cases having proposed the *First Amended Joint Prepackaged Chapter 11 Plan of Remington Outdoor Company, Inc. and Its Affiliated Debtors and Debtors in Possession (Technical Modifications)*, dated April 30, 2018 [Docket No. 221] (as amended, supplemented, restated, or modified through the date hereof, and together with the Plan Supplement (defined below), the "Plan");[2] and upon consideration of:

     a.      *Debtors' Motion For Entry of (I) Order (A) Scheduling Combined Hearing on Adequacy of Disclosure Statement and Confirmation of Plan, (B) Approving Form and Manner of Notice of Combined Hearing and Commencement of Chapter 11 Cases, (C) Approving Solicitation of Non-Accredited Holders, (D) Establishing Procedures For Objecting to Disclosure Statement or Plan, (E) Conditionally Waiving Requirement to File Statements and Schedules, and (F) Directing that a Meeting of Creditors Not Be Convened, and (II) Order (A)*

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are: Remington Outdoor Company, Inc. (4491); FGI Holding Company, LLC (9899); FGI Operating Company, LLC (9774); Remington Arms Company, LLC (0935); Barnes Bullets, LLC (8510); TMRI, Inc. (3522); RA Brands, L.L.C. (1477); FGI Finance, Inc. (0109); Remington Arms Distribution Company, LLC (4655); Huntsville Holdings LLC (3525); 32E Productions, LLC (2381); Great Outdoors Holdco, LLC (7744); and Outdoor Services, LLC (2405). The principal offices of Debtor Remington Outdoor Company, Inc., the top-level holding company, are located at 870 Remington Drive, Madison, NC 27025.

[2]    The Plan is attached as **Exhibit A** hereto.

*Approving Prepetition Solicitation Procedures, (B) Approving Adequacy of Disclosure Statement, and (C) Confirming Plan* [Docket No. 12] (the "Motion"), with respect to which the Court has entered the Order *(A) Scheduling Combined Hearing on Adequacy of Disclosure Statement and Confirmation of Plan, (B) Approving Form and Manner of Notice of Combined Hearing and Commencement of Chapter 11 Cases, (C) Establishing Procedures For Objecting to Disclosure Statement or Plan, (D) Conditionally Waiving Requirement to File Statements and Schedules, and (E) Directing that a Meeting of Creditors Not Be Convened* [Docket No. 64] (the "Scheduling Order");

b. *Disclosure Statement for Joint Prepackaged Chapter 11 Plan of Remington Outdoor Company, Inc. and Its Affiliated Debtors and Debtors in Possession,* dated March 22, 2018 [Docket No. 14] (as amended, supplemented, restated, or modified through the date hereof, the "Disclosure Statement");[3]

c. the Plan, including *Notice of Filing First Amended Joint Prepackaged Chapter 11 Plan of Remington Outdoor Company, Inc. and Its Affiliated Debtors and Debtors in Possession (Technical Modifications)* [Docket No. 221];

d. *Notice of Filing of Plan Supplement Pursuant to Joint Prepackaged Chapter 11 Plan of Remington Outdoor Company, Inc. and Its Affiliated Debtors and Debtors in Possession* [Docket No. 186] (the "Initial Plan Supplement"); and

e. *Notice of Filing of First Amended Plan Supplement Pursuant to Joint Prepackaged Chapter 11 Plan of Remington Outdoor Company, Inc. and its Affiliated Debtors and Debtors in Possession* [Docket No. 194] (the "First Amended Plan Supplement"; together with the Initial Plan Supplement, the "Plan Supplement");

and upon consideration of (collectively, the "Declarations"):

f. *Declaration of Steven P. Jackson, Jr. in Support of Chapter 11 Petitions and First Day Pleadings of Remington Outdoor Company, Inc. and Its Affiliated Debtors and Debtors in Possession* [Docket No. 7] (the "First Day Declaration");

g. *Declaration of Joseph J. Sciametta in Support of Confirmation of the Joint Prepackaged Chapter 11 Plan of Remington Outdoor Company, Inc. and its Affiliated Debtors and Debtors in Possession* [Docket No. 223] (the "Sciametta Declaration");

h. *Declaration of Ari N. Lefkovits in Support of Confirmation of the Joint Prepackaged Chapter 11 Plan of Remington Outdoor Company, Inc. and its*

---

[3] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Plan. Any reference in the Plan to "Remington Entities", "Remington Entity", "Reorganized Remington" or "Reorganized Remington entity", as applicable, shall have the same meaning as "Debtors", "Debtor", "Reorganized Debtors" or "Reorganized Debtor", as applicable, as such terms are used herein.

*Affiliated Debtors and Debtors in Possession* [Docket No. 224] (the "Lefkovits Declaration") and

i.      *Declaration of James Daloia of Prime Clerk LLC Regarding the Solicitation of Votes and Tabulation of Ballots Cast on the Joint Prepackaged Chapter 11 Plan of Remington Outdoor Company, Inc. and Its Affiliated Debtors and Debtors in Possession* [Docket No. 220] (the "Tabulation Declaration").

and the Court having reviewed all other filed pleadings, exhibits, statements, and comments regarding the Debtors' request for entry of an order (this "Confirmation Order") (i) approving the Debtors' prepetition and postpetition solicitation procedures, (ii) approving the adequacy of the Disclosure Statement, and (iii) confirming the Plan; and the Court having scheduled, pursuant to the Scheduling Order, May 2, 2018 at 1:00 p.m. (prevailing Eastern Time) as the date and time to commence a hearing (the "Combined Hearing") to consider the proposed entry of this Confirmation Order; and the Combined Hearing having been held before the Court; and it appearing to the Court that notice of the Combined Hearing and the opportunity for any party in interest to object to the proposed entry of this Confirmation Order have been adequate and appropriate and no other notice need be provided, as evidenced by (collectively, the "Affidavits"):

a.      *Affidavit of Service of Solicitation Materials* [Docket No. 50] (the "Solicitation Affidavit"), sworn to March 26, 2018, by James Daloia, an employee of Prime Clerk LLC ("Prime Clerk"), relating to service of the Disclosure Statement (including, as an exhibit, the Plan), a letter of transmittal from the Debtors, appropriate ballots for holders to accept or reject the Plan (the "Ballots"), and a return envelope (collectively, the "Solicitation Package") on March 22, 2018;

b.      *Affidavit of Service* [Docket No. 49], sworn to March 26, 2018, by Kadeem Champagnie, an employee of Prime Clerk, relating to service of the *Notice of Hearing on First Day Motions* [Docket No. 27] on March 26, 2018;

c.      *Affidavit of Service* [Docket No. 115], sworn to April 2, 2018, by Craig Kaufman, an employee of Prime Clerk, relating to service of the (i) *Notice of Bankruptcy Court Approval to Solicit Non-Accredited Holders* [Docket No. 84] (the "Non-Accredited Holder Notice") on March 28, 2018, and (ii) *Notice of Chapter 11 Bankruptcy Cases; Notice of Deadlines to Object to (I) Adequacy of Disclosure Statement and (II) Plan Confirmation; Notice of Hearing on Disclosure Statement*

*and Plan Confirmation; and Summary of Plan of Reorganization* [Docket No. 83] (the "Combined Notice") on March 28, 2018;

    d.    *Affidavit of Publication* [Docket No. 120], sworn to April 3, 2018, by Calvin C. Liu, an employee of Prime Clerk, relating to publication of the Combined Notice on April 2, 2018;

and based upon and after full consideration of the entire record of the Combined Hearing, including (i) all statements, arguments, and objections made by counsel regarding the proposed entry of this Confirmation Order at or in connection with the Combined Hearing, and (ii) all oral representations, testimony, documents, filings, and other evidence proffered, adduced, or presented regarding the proposed entry of this Confirmation Order at or in connection with the Combined Hearing including, but not limited to, the Declarations; and the Court having ruled on any and all objections, statements, and reservations of rights not consensually resolved or withdrawn regarding the Plan, Disclosure Statement, Motion, and proposed entry of this Confirmation Order, unless otherwise indicated herein; and the Court being fully familiar with, and taking judicial notice of, the entire record of these chapter 11 cases; and it appearing to the Court that the legal and factual bases set forth in the documents filed in support of the proposed entry of this Confirmation Order and presented at the Combined Hearing, including the Declarations and Affidavits, establish just cause for the relief granted herein; and after due deliberation thereon and good cause appearing therefor,

IT IS HEREBY DETERMINED, FOUND, ADJUDGED, AND DECREED THAT:

## Findings of Fact and Conclusions of Law[4]

    A.    **Jurisdiction and Venue**. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. Approval of the Solicitation Procedures (as defined below),

---

[4]    To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such. To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

approval of the adequacy of the Disclosure Statement, and confirmation of the Plan are core proceedings pursuant to 28 U.S.C. § 157(b), and the Court may enter a final order consistent with Article III of the United States Constitution. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

B.    **Chapter 11 Petitions**. On the Petition Date, each Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code, commencing in the Court these chapter 11 cases. The Court has ordered the joint administration of these chapter 11 cases for procedural purposes only pursuant to Bankruptcy Rule 1015(b). Each Debtor is an eligible debtor under section 109 of the Bankruptcy Code. Since the Petition Date, each Debtor has remained authorized to operate its business and manage its properties as a debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No trustee or examiner has been appointed in these chapter 11 cases pursuant to section 1104 of the Bankruptcy Code. On April 9, 2018, the Office of the United States Trustee appointed an official committee of unsecured creditors for these Chapter 11 Cases (the "Committee") [Docket No. 127]. No statutory committee of equity security holders has been appointed pursuant to section 1102 of the Bankruptcy Code. The Debtors timely requested an extension for filing their schedules and statements of financial affairs, which extension was approved by the Scheduling Order.

C.    **Filing of Plan and Disclosure Statement**. On March 25, 2018, the Debtors filed (i) the *Joint Prepackaged Chapter 11 Plan of Remington Outdoor Company, Inc. and Its Affiliated Debtors and Debtors in Possession*, dated March 22, 2018 [Docket No. 13] and (ii) the Disclosure Statement. On April 18, 2018, the Debtors filed the Plan Supplement. On April 20, 2018, the Debtors filed the First Amended Plan Supplement. On April 30, 2018, the Debtors

5

filed the amended Plan reflecting certain technical modifications addressing both formal and informal comments received from various parties in interest.

      **D.**      **Judicial Notice and Objections**.  The Court takes judicial notice of (and deems admitted into evidence for entry of this Confirmation Order) the docket of these chapter 11 cases maintained by the Clerk of Court, including all pleadings and other documents filed, all orders entered, and all evidence and arguments made, proffered, or adduced at the hearings held before the Court during the pendency of these chapter 11 cases.  Any resolutions of objections to entry of this Confirmation Order explained on the record at the Combined Hearing are hereby incorporated by reference.  The objections of the U.S. Trustee and the SEC are sustained in part, and overruled in part, as set forth on the record at the hearing on May 2, 2018.  All other unresolved objections, statements, and reservations of rights are overruled on the merits.

      **E.**      **Burden of Proof**.  The Debtors have the burden of proving the elements of section 1129 of the Bankruptcy Code by a preponderance of the evidence.  As demonstrated by, among other things, the Declarations and Affidavits, the Debtors have met such burden.

      **F.**      **Notice**.  The transmittal and service of the Solicitation Package prior to the Petition Date, and the Combined Notice and Non-Accredited Holder Notice after the Petition Date, were adequate and sufficient under the circumstances, and all parties required to be given notice of the Combined Hearing (including the deadline for filing and serving objections to the Plan, Disclosure Statement, Motion, or proposed entry of this Confirmation Order) have been given due, proper, timely, and adequate notice in accordance with the Scheduling Order and in compliance with the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and any applicable non-bankruptcy law, rule, and regulation, and such parties have had an opportunity to appear and be heard with respect thereto.  No other or further notice is required.

G.      **Solicitation Procedures**. The Debtors' procedures for soliciting votes to accept or reject the Plan (the "Solicitation Procedures"), as set forth in the Solicitation Package, the Non-Accredited Holder Notice, and described in the Motion and Tabulation Declaration, were appropriate and satisfactory based upon the circumstances and in compliance with the provisions of the Bankruptcy Code, including sections 1125 and 1126 thereof, the Bankruptcy Rules, including Bankruptcy Rules 3017 and 3018, the Local Rules, and any other applicable rules, laws, and regulations. In particular and without limitation, as detailed below, (1) the Solicitation Package and the Non-Accredited Holder Notice were transmitted to all holders of Claims and Interests entitled to vote on the Plan and were not required to be transmitted to any other holders of Claims and Interests, (2) the Ballots included in the Solicitation Package adequately addressed the particular needs of these chapter 11 cases, (3) holders of Claims and Interests, including any non-Accredited Holders of Term Loan Claims or Third Lien Notes Claims, entitled to vote on the Plan were prescribed sufficient and reasonable time and notice to submit Ballots, and (4) votes were tabulated fairly, in good faith, and as set forth in the Solicitation Package and the Tabulation Declaration.

(i)      *Transmission of Solicitation Packages*. As evidenced by the Solicitation Affidavit and Tabulation Declaration, the Debtors only solicited votes to accept or reject the Plan from holders of Allowed Claims in Class 4 and Class 5 (collectively, the "Voting Classes"). All Classes other than the Voting Classes (collectively, the "Non-Voting Classes") are either (a) Unimpaired and, pursuant to section 1126(f) of the Bankruptcy Code, conclusively presumed to have accepted the Plan, or (b) Impaired and, pursuant to section 1126(g) of the Bankruptcy Code, deemed to have rejected the Plan. The Debtors therefore were not required to solicit votes on the Plan from holders in Class 1 (Priority Non-Tax Claims), Class 2 (Other Secured Claims), Class 3 (ABL Facility Claims), Class 6 (General Unsecured Claims), Class 7 (Intercompany Claims), Class 8 (Settled Intercompany Claims), Class 9 (Interests in ROC), or Class 10 (Intercompany Interests).

On March 22, 2018, the Solicitation Packages (including the Plan) were distributed to all holders of record of the Claims in the Voting Classes.

7

Holders of record were determined as of the date specified in the Solicitation Package for such purpose, March 19, 2018 (the "Voting Record Date"), the selection of which was appropriate and reasonable under the circumstances. Transmission of the Solicitation Package to holders of Claims and Interests in the Voting Classes was timely, adequate, and sufficient under the circumstances, and no further transmission of the Solicitation Package was required.

On March 27, 2018, the Debtors obtained the Court's approval to solicit votes on the Plan from all beneficial holders of Claims in the Voting Classes who were not "accredited investors" (an "Accredited Investor") as defined in Rule 501 of the Securities Act of 1933, as amended (the "Securities Act"). The Non-Accredited Holder Notice, and the solicitation of holders who were not Accredited Investors, was timely, adequate, and sufficient under the circumstances (see *Affidavit of Service* [Docket No. 115]).

(ii)     *Ballots.* The Ballots, forms of which are attached as an exhibit to the Motion, adequately conform to Official Form No. 14, and the modifications thereto addressed the particular needs of these chapter 11 cases and were appropriate for the holders of Claims and Interests entitled to vote to accept or reject the Plan. As evidenced by the Tabulation Declaration, the Ballots included in the tabulation results for the Plan were in form consistent with the requirements of Bankruptcy Rule 3018(c).

(iii)    *Voting Deadline.* Establishment and notice of the deadline by which Ballots were required to be received by Prime Clerk in order to be counted for or against the Plan (the "Voting Deadline") was appropriate and reasonable under the circumstances. The period during which the Debtors solicited acceptances to the Plan was a reasonable period of time for the holders of Claims and Interests entitled to vote on the Plan to make an informed decision to accept or reject the Plan.

(iv)     *Vote Tabulation.* As evidenced by the Tabulation Declaration, Prime Clerk adhered to a tabulation protocol set forth in the Solicitation Packages (including in the instructions in the Ballots), which protocol was appropriate and reasonable under the circumstances. In particular, the tabulation results for the Plan only included those timely Ballots that were properly completed and executed by the holder of record of the relevant Claim or Interest (or such holder's authorized representative) as of the Voting Record Date. Votes to accept or reject the Plan were tabulated fairly and in good faith.

Accordingly, the Solicitation Procedures are approved in all respects, and the acceptances of the Plan obtained in accordance with the Solicitation Procedures, both prior to and subsequent to the

Petition Date, satisfy the applicable requirements set forth in Bankruptcy Rule 3018 for such acceptances to be deemed to be acceptances of the Plan pursuant to section 1125 and 1126 of the Bankruptcy Code, as applicable.

**H.    Adequacy of Disclosure Statement.**    Based on the circumstances of these chapter 11 cases and the extensive and comprehensive nature of the Disclosure Statement, which included descriptions and summaries of, among other things, (1) the Plan, (2) certain events preceding the commencement of these chapter 11 cases, (3) securities to be issued under the Plan, (4) the Restructuring Support Agreement, (5) risk factors affecting the Plan, (6) an analysis setting forth the estimated return that creditors would receive in a chapter 7 liquidation, (7) financial projections and a valuation analysis that would be relevant to holders of Claims in determining whether to accept or reject the Plan, and (8) certain federal tax law consequences of the Plan, the adequacy of the Disclosure Statement is approved in all respects.[5]  The Disclosure Statement contains (1) sufficient information of a kind to satisfy the disclosure requirements of all applicable non-bankruptcy law, rules, and regulations, including the Securities Act, and (2) "adequate information," as such term is defined in section 1125(a) of the Bankruptcy Code, with respect to the Debtors, the Plan, and the transactions contemplated therein.  Accordingly, the Disclosure Statement complies with section 1126(b) of the Bankruptcy Code for purposes of subsections (c) and (d) of section 1126 of the Bankruptcy Code.  By filing both the Disclosure Statement and the Plan on the Petition Date, the Debtors have satisfied the filing requirement in Bankruptcy Rule 3016(b).

**I.    Plan Supplement.**  All materials in the Plan Supplement comply with the terms of the Plan, and the filing and notice of such documents is good and proper in accordance with

---

[5]    As a matter of clarification, the Disclosure Statement in certain instances referred to the Huntsville Note as the "Huntsville Third Lien Note," which instead should have been the "Huntsville First Lien Note."

the Bankruptcy Code, Bankruptcy Rules, and Local Rules, and no other or further notice is or shall be required.  All exhibits and documents included in the Plan Supplement are incorporated into and are a part of the Plan as if set forth in full in the Plan.  The rights of the Debtors are reserved, subject to the consent rights set forth in the Plan, to further amend, update, or modify the Plan Supplement prior to the Effective Date subject to the terms of this Confirmation Order.

      **J.**      **Solicitation in Good Faith**.  The Debtors have solicited votes to accept or reject the Plan in good faith and in compliance with the Bankruptcy Code.  Pursuant to section 1125(e) of the Bankruptcy Code, the Debtors and their respective affiliates, agents, representatives, members, principals, shareholders, officers, directors, employees, advisors, and attorneys have participated in good faith and in compliance with the Bankruptcy Code in the offer, issuance, sale, and purchase of securities offered and sold under the Plan and any prior version thereof, and, therefore, none of any such parties or individuals or the Reorganized Debtors will have any liability for the violation of any applicable law, rule or regulation governing the solicitation of votes on the Plan or the offer, issuance, sale, or purchase of the securities offered and sold under the Plan and any prior version thereof.

      **K.**      **Plan's Compliance with Bankruptcy Code (11 U.S.C. § 1129(a)(1)).**  As detailed below, the Plan complies with the applicable provisions of the Bankruptcy Code, thereby satisfying section 1129(a)(1) of the Bankruptcy Code.

      (i)    *Plan Proponents (11 U.S.C. § 1121(a))*.  The Debtors are proper plan proponents under section 1121(a) of the Bankruptcy Code.  In addition, the Plan is dated and identifies the Debtors as proponents, thereby satisfying Bankruptcy Rule 3016(a).

      (ii)   *Proper Classification (11 U.S.C. §§ 1122 and 1123(a)(1))*.  Except with respect to Administrative Expenses, ABL DIP Claims, Term DIP Claims, ROC DIP Claims, and Priority Tax Claims, which need not be classified, Article III of the Plan classifies all Claims and Interests into ten Classes.  Because the Plan constitutes a separate chapter 11 plan with respect to each Debtor, Article III of the Plan also provides that, while the Claims or

Interests in a particular Class have been placed in one Class for the purposes of nomenclature, the Claims and Interests against each applicable Debtor shall be treated as being in a separate sub-Class for the purpose of receiving distributions under the Plan. Each Claim and Interest is substantially similar to all other Claims or Interests, as the case may be, that have been placed into the same Class as such Claim or Interest. Valid business, factual, and legal reasons exist for separately classifying the various Classes of Claims and Interests created under the Plan, including by each Debtor, and such Classes do not unfairly discriminate among the holders of Claims and Interests. The Plan therefore satisfies sections 1122 and 1123(a)(1) of the Bankruptcy Code.

(iii) *Unimpaired Classes (11 U.S.C. § 1123(a)(2))*. Article III of the Plan specifies each Class that is Unimpaired under the Plan within the meaning of section 1124 of the Bankruptcy Code, thereby satisfying section 1123(a)(2) of the Bankruptcy Code.

(iv) *Treatment of Impaired Classes (11 U.S.C. § 1123(a)(3))*. Article III of the Plan specifies the treatment of all Classes that are Impaired under the Plan within the meaning of section 1124 of the Bankruptcy Code, thereby satisfying section 1123(a)(3) of the Bankruptcy Code.

(v) *Same Treatment Within Classes (11 U.S.C. § 1123(a)(4))*. Article III of the Plan provides for the same treatment of each Claim or Interest in a particular Class, unless the holder of a particular Claim or Interest agrees to a less favorable treatment of such Claim or Interest, thereby satisfying section 1123(a)(4) of the Bankruptcy Code.

(vi) *Implementation of Plan (11 U.S.C. § 1123(a)(5))*. Article V and other provisions of the Plan specifically provide, in detail, adequate and proper means for the Plan's implementation. On the Effective Date, Reorganized ROC will issue and distribute the New Common Units and New Warrants, and Reorganized OpCo will fund other distributions required under the Plan with Cash on hand, including Cash from operations and any Cash received on the Effective Date, and borrowings under the Term/ROC DIP Facility, the ABL DIP Facility, the New ABL Facility, and the New Term Loan Facility, as applicable. In addition, cash on hand at Reorganized ROC will be used to pay the Third Lien Noteholder Cash Distribution. Accordingly, the Plan satisfies section 1123(a)(5) of the Bankruptcy Code.

(vii) *Charter Provisions (11 U.S.C. § 1123(a)(6))*. The New Organizational Documents, filed as part of the Plan Supplement, prohibit the issuance of nonvoting equity securities, thereby satisfying section 1123(a)(6) of the Bankruptcy Code.

(viii) *Designation of Directors and Officers (11 U.S.C. § 1123(a)(7))*. Article V.I. of the Plan and the New Organizational Documents, filed as part of

the Plan Supplement, contain provisions with respect to the selection of the Reorganized Debtors' directors and officers that are consistent with the interests of creditors and equity security holders and with public policy. The Plan does not contain any provisions with respect to the selection of the Reorganized Debtors' directors and officers that are inconsistent with the interests of creditors and equity security holders or with public policy, thereby satisfying section 1123(a)(7) of the Bankruptcy Code.

(ix)    *No Individual Debtor – Requirement Inapplicable (11 U.S.C. § 1123(a)(8))*. None of the Debtors is an individual, and section 1123(a)(8) of the Bankruptcy Code is therefore inapplicable to the Plan.

(x)    *Impairment/Unimpairment of Classes (11 U.S.C. § 1123(b)(1))*. Article III of the Plan impairs the Classes 4, 5, 8 and 9, and leaves unimpaired Classes 1, 2, 3, 6, 7, and 10, as contemplated by section 1123(b)(1) of the Bankruptcy Code.

(xi)    *Assumption and Rejection (11 U.S.C. § 1123(b)(2))*. Article VII.A of the Plan provides for the assumption and rejection of Executory Contracts and Unexpired Leases in accordance with section 365 of the Bankruptcy Code, as contemplated by section 1123(b)(2) of the Bankruptcy Code.

(xii)    *Settlement of Claims and Interests (11 U.S.C. § 1123(b)(3))*. The Plan provides for certain settlements of the Debtors' claims and interests, including through the releases, exculpation, and injunction pursuant to Article IX of the Plan and through a Litigation Settlement, if applicable. The Plan also provides for the retention and enforcement by the Litigation Trust, if one is established, of certain of the Debtors' claims and interests, as contemplated by section 1123(b)(3) of the Bankruptcy Code.

(xiii)    *Additional Provisions (11 U.S.C. § 1123(b)(6))*. The Plan contains other appropriate provisions that are not inconsistent with the applicable provisions of the Bankruptcy Code, as contemplated by section 1123(b)(6) of the Bankruptcy Code.

**L.    Plan Proponents' Compliance with Bankruptcy Code (11 U.S.C. §**

**1129(a)(2)).** As detailed below, the Debtors have complied with the applicable provisions of the

Bankruptcy Code, thereby satisfying section 1129(a)(2) of the Bankruptcy Code:

(i)    Each Debtor is eligible under section 109 of the Bankruptcy Code to be a debtor in these chapter 11 cases;

(ii)    The Debtors have complied with the applicable provisions of the Bankruptcy Code, including sections 1125 and 1126, the Bankruptcy Rules, including Bankruptcy Rules 3017 and 3018, the Local Rules, the

12

Scheduling Order, and any applicable non-bankruptcy law, rule, and regulation in transmitting the Plan, Plan Supplement, Disclosure Statement, Non-Accredited Holder Notice, Ballots, and related documents and notices and in soliciting and tabulating the votes on the Plan; and

(iii)    The Debtors have complied in all other respects with any applicable provisions of the Bankruptcy Code, except as otherwise provided or permitted by orders of the Bankruptcy Court.

**M.    Plan Proposed in Good Faith (11 U.S.C. § 1129(a)(3)).**    The Debtors have proposed the Plan (including all documents necessary to effectuate the Plan) and the transactions contemplated in the Plan in good faith and not by any means forbidden by law.  The Debtors' good faith is evident from the facts and record of these chapter 11 cases, the Disclosure Statement, the record of the Combined Hearing and other proceedings held in these chapter 11 cases, and the overwhelming support indicated by substantially all creditors who voted on the Plan voting to accept the Plan.  The Plan was proposed with the legitimate and honest purpose of maximizing the value of the Estates and to effectuate a successful and efficient reorganization of the Debtors.  The Plan (including all documents necessary to effectuate the Plan) was negotiated at arm's length among the Debtors, the Consenting Creditors, the ABL Parties, and each of their respective professionals.  Further, the Plan's classification, indemnification, exculpation, release, and injunction provisions have been negotiated in good faith and at arm's-length, are consistent with sections 105, 1122, 1123, 1129, and 1142 of the Bankruptcy Code and are each necessary for the Debtors' successful reorganization.  Accordingly, the Plan satisfies section 1129(a)(3) of the Bankruptcy Code.

**N.    Payment for Services or Costs and Expenses (11 U.S.C. § 1129(a)(4)).**    Any payment made or to be made by the Debtors or by a person issuing securities or acquiring property under the Plan for services or for costs and expenses of the Debtors' professionals in connection with these chapter 11 cases, or in connection with the Plan and incident to the

chapter 11 cases, has been approved by, or is subject to the approval of, the Court as reasonable, thereby satisfying section 1129(a)(4) of the Bankruptcy Code.

O.     **Directors, Officers, and Insiders (11 U.S.C. § 1129(a)(5)).** The identity and affiliations of any individual proposed to serve as a director or officer of the Reorganized Debtors and the identity and nature of any compensation of any insider that will be employed or retained by the Reorganized Debtors have been fully disclosed in the Disclosure Statement, Plan, and Plan Supplement, to the extent available, and the appointment to, or continuance in, such offices of such individuals is consistent with the interests of holders of Claims and Interests and with public policy. Each such individual will serve in accordance with the terms and subject to the conditions of the New Organizational Documents and any other relevant organizational documents, each as applicable. Accordingly, the Debtors have complied with section 1129(a)(5) of the Bankruptcy Code.

P.     **No Rate Changes – Requirement Inapplicable (11 U.S.C. § 1129(a)(6)).** The Plan does not provide for any rate changes by the Debtors, and section 1129(a)(6) of the Bankruptcy Code is therefore inapplicable to the Plan.

Q.     **Best Interest of Creditors (11 U.S.C. § 1129(a)(7)).** The liquidation analysis attached to the Disclosure Statement and other evidence submitted, proffered, or adduced in support of the Plan at or in connection with the Combined Hearing (1) is persuasive and credible, (2) has not been controverted by other persuasive and credible evidence, (3) employs reasonable methodologies and assumptions, and (4) establishes that each holder of an Impaired Claim or Interest will receive or retain property under the Plan, on account of such Impaired Claim or Interest, with a value as of the Effective Date that is not less than the amount that such holder

would receive or retain if the Debtors were liquidated under chapter 7 of the Bankruptcy Code on such date. Accordingly, the Plan satisfies section 1129(a)(7) of the Bankruptcy Code.

R.      **Acceptance by Certain Classes (11 U.S.C. § 1129(a)(8)).** The Plan does not satisfy the requirements of section 1129(a)(8) of the Bankruptcy Code. Classes 1, 2, 3, 6, 7, and 10 constitute Unimpaired Classes, each of which is conclusively presumed to have accepted the Plan in accordance with section 1126(f) of the Bankruptcy Code. The Voting Classes have voted to accept the Plan. However, holders of Claims or Interests in Classes 8 and 9 (the "Deemed Rejecting Classes"), if any, receive no recovery on account of their Claims or Interests pursuant to the Plan and are deemed to have rejected the Plan. Notwithstanding the foregoing, the Plan is confirmable because it satisfies sections 1129(a)(10) and 1129(b) of the Bankruptcy Code.

S.      **Treatment of Administrative Expenses, DIP Claims, and Priority Claims (11 U.S.C. § 1129(a)(9)).** The treatment of Administrative Expenses, ABL DIP Claims, Term DIP Claims, ROC DIP Claims, and Priority Tax Claims under Article II of the Plan satisfies the requirements of, and complies in all respects with, section 1129(a)(9) of the Bankruptcy Code.

T.      **Acceptance by Impaired Class of Claims (11 U.S.C. § 1129(a)(10)).** Three Classes of Claims are Impaired under the Plan. As evidenced by the Tabulation Declaration, two Impaired Classes of Claims – Class 4 (Term Loan Claims) and Class 5 (Third Lien Notes Claims) – have voted to accept the Plan in accordance with section 1126(c) of the Bankruptcy Code, determined without including any acceptance of the Plan by any "insider," as that term is defined in section 101(31) of the Bankruptcy Code, thereby satisfying the requirements of section 1129(a)(10) of the Bankruptcy Code.

U.      **Feasibility (11 U.S.C. § 1129(a)(11)).** The projected financial results attached to the Disclosure Statement and other evidence submitted, proffered, or adduced in support of the

15

Plan at or in connection with the Combined Hearing (1) are persuasive and credible, (2) have not been controverted by other persuasive and credible evidence, (3) employ reasonable methodologies and assumptions, and (4) establish that the Plan is feasible and that there is a reasonable prospect of the Reorganized Debtors being able to meet their financial obligations under the Plan and in their businesses in the ordinary course and that confirmation of the Plan is not likely to be followed by the liquidation or the need for further financial reorganization of the Reorganized Debtors, thereby satisfying the requirements of section 1129(a)(11) of the Bankruptcy Code.

V.      **Payment of Fees (11 U.S.C. § 1129(a)(12)).**  Articles II.A and XIII.C of the Plan provide for the payment on the Effective Date of all General Administrative Expenses, including all fees and charges assessed against the Estates pursuant to chapter 123 of title 28 of the United States Code, which includes section 1930 thereof, that are then due and owing, to the extent not already paid during these chapter 11 cases, thereby satisfying the requirements of section 1129(a)(12) of the Bankruptcy Code.

W.      **No Retiree Benefits – Requirement Inapplicable (11 U.S.C. § 1129(a)(13)).** The Debtors do not provide or pay any "retiree benefits," as such term is defined in section 1114 of the Bankruptcy Code, and section 1129(a)(13) of the Bankruptcy Code is therefore inapplicable to the Plan.

X.      **No Domestic Support Obligations – Requirement Inapplicable (11 U.S.C. § 1129(a)(14)).**  The Debtors are not required by a judicial or administrative order, or by statute, to pay any domestic support obligation, and section 1129(a)(14) of the Bankruptcy Code is therefore inapplicable to the Plan.

**Y.    No Individual Debtor – Requirement Inapplicable (11 U.S.C. § 1129(a)(15)).**
None of the Debtors is an individual, and section 1129(a)(15) of the Bankruptcy Code is
therefore inapplicable to the Plan.

**Z.    No Applicable Nonbankruptcy Law Regarding Transfers – Requirement
Inapplicable (11 U.S.C. § 1129(a)(16)).**    Each of the Debtors is a moneyed, business, or
commercial corporation or trust, and section 1129(a)(16) of the Bankruptcy Code is therefore
inapplicable to the Plan.

**AA.    "Cram Down" Requirements (11 U.S.C. § 1129(b)).** The Plan satisfies the
requirements of section 1129(b) of the Bankruptcy Code. Notwithstanding the fact that the
Deemed Rejecting Classes (Class 8 (Settled Intercompany Claims) and Class 9 (Interests in
ROC)) have been deemed to reject the Plan, the Plan may be confirmed pursuant to section
1129(b)(l) of the Bankruptcy Code. *First*, all of the requirements of section 1129(a) of the
Bankruptcy Code other than section 1129(a)(8) have been met. *Second*, the Plan is fair and
equitable with respect to the Deemed Rejecting Classes.  The Plan has been proposed in good
faith, is reasonable and meets the requirements that no holder of any Claim or Interest that is
junior to each Deemed Rejecting Class will receive or retain any property under the Plan on
account of such junior Claim or Interest and no holder of a Claim in a Class senior to such
Classes is receiving more than 100% on account of its Claim. Accordingly, the Plan is fair and
equitable towards all holders of Claims and Interests in the Deemed Rejecting Classes. *Third*, the
Plan does not discriminate unfairly with respect to the Deemed Rejecting Classes because no
similarly situated class will receive more favorable treatment.  Where the Plan provides differing
treatment for certain Classes of Claims or Interests, the Debtors have a rational basis for doing so

(or the Class consented to such treatment). The Plan may therefore be confirmed despite the fact that not all Impaired Classes have voted to accept the Plan.

BB. **Only One Plan (11 U.S.C. § 1129(c)).** The Plan satisfies the requirements of section 1129(c) of the Bankruptcy Code. The Plan is the only chapter 11 plan filed in each of these chapter 11 cases.

CC. **Principal Purpose of the Plan (11 U.S.C. § 1129(d)).** The Plan satisfies the requirements of section 1129(d) of the Bankruptcy Code. The principal purpose of the Plan is not the avoidance of taxes or the avoidance of the application of section 5 of the Securities Act.

DD. **No Small Business Case (11 U.S.C. § 1129(e)).** None of the Debtors is a "small business debtor," as such term is defined in section 101(51D) of the Bankruptcy Code, and section 1129(e) of the Bankruptcy Code is therefore inapplicable to the Plan.

EE. **Satisfaction of Confirmation Requirements.** Based upon the foregoing, all applicable requirements for confirming the Plan set forth in section 1129 of the Bankruptcy Code have been satisfied.

FF. **Implementation.** All documents necessary to implement the Plan, including those contained in the Plan Supplement, the New ABL Facility Documents, the New FILO Term Loan Facility Documents, and the New Term Loan Facility Documents, and all other relevant and necessary documents have been negotiated in good faith and at arm's length and shall, upon completion of documentation and execution, be valid, binding, and enforceable agreements and shall not be in conflict with any federal or state law.

GG. **Releases, Exculpation, and Injunction.** The Court has jurisdiction under sections 1334(a) and (b) of title 28 of the United States Code to approve the releases, exculpation, and injunction set forth in the Plan. The settlements reflected in the Plan are (1) in

the best interests of the Debtors, their Estates, and all holders of Claims or Interests, (2) fair, equitable, and reasonable, (3) made in good faith, and (4) hereby approved by the Court pursuant to Bankruptcy Rule 9019. The allowance, classification, and treatment of any Allowed Claims and Allowed Interests of a Released Party take into account any Causes of Action, whether under the Bankruptcy Code or otherwise under applicable non-bankruptcy law, that may exist between the Debtors and any Released Party.

**HH.**    As contemplated by section 1123(b)(3) of the Bankruptcy Code, Article IX.D of the Plan describes certain releases granted by the Debtors and certain third parties (the "Releases"). The Releases, including the Releases of non-Debtor third parties, are permitted under applicable bankruptcy law when, as has been established here based upon the record in these chapter 11 cases and the evidence presented at the Combined Hearing, they are (1) in exchange for the good and valuable consideration provided by the Released Parties; (2) a good faith settlement and compromise of the claims released by Article IX.D of the Plan; (3) in the best interests of the Debtors and all holders of Claims and Interests; (4) fair, equitable, and reasonable; (5) given and made after due notice and opportunity for a hearing; (6) a bar to any Entity (including the Debtors) asserting any claim or Cause of Action released pursuant to Article IX.D the Plan, (7) consensual, and (8) are integral parts of the Plan.

**II.**    Furthermore, the Releases of non-debtors in Article IX of the Plan are fair to holders of Claims and Interests, are necessary to the proposed restructuring, and such Releases are appropriate because (1) there is an identity of interest between the Debtors and each of the Released Parties as they share the common goal of confirming the Plan and implementing the transactions contemplated thereby; (2) each of the Released Parties provided a substantial contribution to the reorganization, including without limitation the efforts of the Released Parties

to, among other things, facilitate the reorganization of the Debtors, implement the restructuring contemplated by the Restructuring Support Agreement and the Plan, and provide funding for the Chapter 11 Cases, (3) each Impaired Class entitled to vote on the Plan voted to accept, and (4) the Plan provides for all holders of General Unsecured Claims to be paid in full or otherwise be unimpaired.  In addition, the Releases provide finality for the Debtors, the Reorganized Debtors, and the Released Parties regarding the parties' respective obligations under the Plan and were specifically negotiated by the Debtors, the Consenting Creditors, and the ABL Parties as part of the Restructuring Support Agreement and the Plan.  Without the Releases, the Released Parties are not willing to make their contributions under the Plan.

**JJ.**    Further, the exculpation provision described in Article IX.E of the Plan (the "Exculpation") is appropriate under applicable law because it was proposed in good faith, was formulated following extensive good-faith, arm's-length negotiations with key constituents and is appropriately limited in scope, as it will have no effect on the liability of any Entity for any act or omission that is determined by a Final Order of a court of competent jurisdiction to have constituted willful misconduct, fraud, or gross negligence.  The Exculpated Parties have participated in compliance with the applicable provisions of the Bankruptcy Code with regard to the solicitation and distribution of the securities pursuant to the Plan and, therefore, are not, and on account of such distributions shall not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or such distributions made pursuant to the Plan.

**KK.**    The injunction provision set forth in Article IX.F of the Plan is necessary to implement, preserve, and enforce the discharge described in Article IX.B of the Plan, the

Releases, and the Exculpation.  The injunction provision is narrowly tailored to achieve this purpose.

**LL.**    The record of the Combined Hearing and these chapter 11 cases, including the Declarations, is sufficient to support the releases, exculpation, and injunction provided for in Article IX.D, Article IX.E, and Article IX.F of the Plan, respectively.  Accordingly, based upon the record of these chapter 11 cases, the representations and the evidence proffered, adduced and presented at the Combined Hearing, the Court finds that the releases, exculpation, and injunction set forth in Article IX of the Plan are consistent with the Bankruptcy Code and applicable law. The failure to implement the injunction, exculpation, and releases would seriously impair the Debtors' ability to confirm the Plan.

**MM.  Preservation of Causes of Action**.    Article V.M of the plan provides, in accordance with section 1123(b) of the Bankruptcy Code, but subject in all respects to Articles VI and IX of the Plan, that each Debtor shall retain all rights to commence and pursue, as appropriate, any and all Litigation Claims that such Debtor or its Estate may hold whether arising before or after the Petition Date, including any actions specifically identified in the Plan Supplement, and such rights to commence, prosecute, settle, or assert as a defense such Litigation Claims shall be preserved notwithstanding the occurrence of the Effective Date.  If a Litigation Trust is established, any and all Litigation Claims that constitute Litigation Trust Assets shall be transferred to the Litigation Trust on the Effective Date, and the Litigation Trustee shall be entitled to enforce all rights to commence and pursue any such Litigation Claims at the Direction of the Litigation Trust Advisory Board in accordance with the terms of the Litigation Trust Agreement.   The provisions of the Plan, including the Plan Supplement, regarding the Litigation Claims and the Litigation Trust are appropriate, fair, equitable, and

reasonable and are in the best interests of the Debtors, the Estates, and holders of Claims and Interests.

**NN.    Good Faith**. The Debtors, the Reorganized Debtors, the Consenting Creditors, each of the New ABL Parties, and each of the Released Parties have been, are, and will continue to be acting in good faith if they proceed to (1) consummate the Plan and the agreements, settlements, transactions, and transfers contemplated thereby and (2) take the actions authorized, directed or contemplated by this Confirmation Order.

**OO.    Exit Facility**. The New Exit Facilities Documents (as defined below), and each of the New Exit Facilities (as defined below) to which they respectively relate, are, individually and collectively, essential elements of the Plan, and entry into the New Exit Facilities Documents is in the best interests of the Debtors, their Estates, and the Holders of Claims and Interests and is necessary and appropriate for consummation of the Plan and the operations of the Reorganized Debtors. The Debtors have exercised sound business judgment in determining to enter into the New Exit Facilities Documents and have provided adequate notice thereof. The New Exit Facilities Documents have been negotiated in good faith and at arm's length among the Debtors and the applicable New ABL Parties, New FILO Term Loan Lenders, New FILO Term Loan Agent, New Term Loan Lenders, and the New Term Loan Agent, without the intent to hinder, delay, or defraud any creditor of the Debtors, and any credit extended and loans made or deemed made to the Reorganized Debtors by the applicable New ABL Lenders, New FILO Term Loan Lenders, and/or New Term Loan Lenders pursuant to the applicable New Exit Facilities Documents, and any fees paid thereunder, are deemed to have been extended, issued, and made or deemed made in good faith and for legitimate business purposes. The terms and conditions of

the New Exit Facilities Documents set forth in the Plan Supplement are fair and reasonable and are approved.

**PP.** **New Organizational Documents.** The terms of the New Organizational Documents are fair and reasonable and are in the best interests of the Debtors' Estates and their creditors.  The New Organizational Documents are the result of good faith, arm's-length negotiations among the Debtors and the Consenting Creditors, are appropriate and consistent with the applicable provisions of the Bankruptcy Code and the Bankruptcy Rules, including, but not limited to, Bankruptcy Code sections 1123, 1129, and 1142, and are necessary to the Debtors' successful emergence from chapter 11. The execution, delivery, or performance by the Debtor or Reorganized Debtors, as the case may be, of any documents in connection with the New Organizational Documents and compliance by the Debtors or Reorganized Debtors, as the case may be, with the terms thereof is authorized by, and will not conflict with, the terms of the Plan or this Order. The notice provided by the Debtor of the New Organizational Documents was consistent with the Bankruptcy Code and the Bankruptcy Rules and no other or further notice is or shall be required. The New Organizational Documents are hereby approved and shall constitute legal, valid, binding and authorized agreements of the Reorganized Debtors enforceable in accordance with their terms.

**QQ.** **Valuation.** The valuation of the Reorganized Debtors set forth in the Disclosure Statement was prepared, at the Debtors' request, by Lazard Frères & Co. LLC, in accordance with standard and customary valuation principles and practices, and is a fair and reasonable estimate of the value of the Reorganized Debtors' businesses as a going concern.

**RR.    Retention of Jurisdiction**.    Pursuant to sections 105(a) and 1142 of the Bankruptcy Court, the Court may properly retain jurisdiction over the matters arising out of, or related to, these chapter 11 cases and the Plan as set forth in Article XII of the Plan.

**SS.    Waiver of Stay**.    Given the facts and circumstances of the Chapter 11 Cases, it is appropriate that this Confirmation Order shall not be stayed pursuant to Bankruptcy Rules 3020(e), 6004(g), 6006(d), or 7062, and the Confirmation Order shall take effect immediately upon its entry.

AND IT IS HEREBY ORDERED, ADJUDGED, AND DECREED THAT:

<u>**Order**</u>

1.    **Findings of Fact and Conclusions of Law**.    The above-referenced findings of fact and conclusions of law are hereby incorporated by reference as though fully set forth herein and, together with the findings and conclusions in the record of the Combined Hearing, shall constitute the Court's findings of fact and conclusions of law pursuant to rule 52 of the Federal Rules of Civil Procedure, as made applicable herein by Bankruptcy Rules 7052 and 9014.  To the extent any finding of fact shall be determined to be a conclusion of law, it shall be deemed so, and vice versa.

2.    **Notice of Combined Hearing**.    The Combined Notice complied with the terms of the Scheduling Order, was adequate and sufficient under the circumstances, and all parties required to be given notice of the Combined Hearing (including the deadline for filing and serving objections to the Plan, Disclosure Statement, Motion, or proposed entry of this Confirmation Order) have been given due, proper, timely, and adequate notice in accordance with the Scheduling Order and in compliance with the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and any applicable non-bankruptcy law, rule, and regulation, and such parties

have had an opportunity to appear and be heard with respect thereto. No other or further notice is required.

3. **Objections**. The objections of the U.S. Trustee and the SEC are sustained in part, and overruled in part, as set forth on the record at the hearing on May 2, 2018. All other objections, responses to, and statements and comments, if any, in opposition to, the Plan and/or the Disclosure Statement, respectively, which have not been resolved as set forth on the record, or withdrawn, shall be, and hereby are, overruled in their entirety or are otherwise resolved as incorporated herein.

4. **Solicitation Procedures**. The Solicitation Procedures are approved in all respects, including the selection of the Voting Record Date and Voting Deadline, and were appropriate and satisfactory based upon the circumstances and in compliance with the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and any other applicable non-bankruptcy law. Transmission of the Solicitation Package and Non-Accredited Holder Notice to holders of Claims in the Voting Classes was timely, adequate, and sufficient under the circumstances, and no further transmission of the Solicitation Package was required.

5. **Ballots**. The Ballots are in compliance with Bankruptcy Rule 3018(c), adequately conform to Official Form B314, and are approved in all respects.

6. **Adequacy of Disclosure Statement**. The Disclosure Statement is approved in all respects and contains (a) sufficient information of a kind to satisfy the disclosure requirements of all applicable non-bankruptcy law, rules, and regulations, including the Securities Act, to the extent applicable, and (b) "adequate information," as such term is defined in section 1125(a) of the Bankruptcy Code, with respect to the Debtors, the Plan, and the transactions contemplated therein.

7.      **Approval of Solicitation**.  The solicitation of votes on the Plan conducted prior to the Petition Date complied with the Solicitation Procedures, was appropriate and satisfactory based upon the circumstances of these chapter 11 cases, and was in compliance with the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and applicable non-bankruptcy law, including, for the avoidance of doubt, section 1125(g) of the Bankruptcy Code.  Holders of Claims or Interests who accepted the Plan prior to the Petition Date pursuant to the Debtors' solicitation of the Plan are deemed, pursuant to section 1126(b) of the Bankruptcy Code, to have accepted the Plan for purposes of subsections (c) and (d), as applicable, of section 1126 of the Bankruptcy Code.  The solicitation of votes on the Plan conducted after the Petition Date complied with the Solicitation Procedures, was appropriate and satisfactory based upon the circumstances of these chapter 11 cases, and was in compliance with the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and applicable non-bankruptcy law, including, for the avoidance of doubt, sections 1125 and 1126 of the Bankruptcy Code.

8.      To the extent that the Debtors' prepetition solicitation of acceptances of the Plan is deemed to constitute an offer of new securities, the Debtors are exempt from the registration requirements of the Securities Act (and of any equivalent state securities or "blue sky" laws) with respect to their prepetition solicitation under section 4(a)(2) of the Securities Act and similar Blue Sky Laws provisions.  Likewise, any offer of new securities after the Petition Date is likewise exempt from registration with the SEC, and similar state authorities, under section 1145(a) of the Bankruptcy Code.

9.      **Confirmation of Plan**.  The Plan and each of its provisions shall be, and hereby are, CONFIRMED pursuant to section 1129 of the Bankruptcy Code.  The documents contained in the Plan Supplement are authorized and approved.  The terms of the Plan, including the Plan

Supplement, are incorporated by reference into and are an integral part of this Confirmation Order.

10.    **No Action Required**.  Pursuant to the appropriate provisions of applicable law and section 1142(b) of the Bankruptcy Code, no action of the respective directors, equity holders, managers, or members of the Debtors or the Reorganized Debtors, as applicable, shall be required to authorize the Debtors or the Reorganized Debtors, as applicable, to enter into, execute, deliver, file, adopt, amend, restate, consummate, or effectuate, as the case may be, the Plan and any contract, instrument, or other document to be executed, delivered, adopted, or amended in connection with the implementation of the Plan, including the Plan Supplement.

11.    **Binding Effect**.  Subject to Article X.B of the Plan and notwithstanding Bankruptcy Rules 3020(e), 6004(h), or 7062 or otherwise, upon the occurrence of the Effective Date, the terms of the Plan shall be immediately effective and enforceable and deemed binding upon the Debtors, the Reorganized Debtors, any and all holders of Claims or Interests (irrespective of whether such Claims or Interests are deemed to have accepted the Plan), all Entities that are party, or subject, to the settlements, compromises, releases, discharges, and injunctions described in the Plan, each Entity acquiring property under the Plan, and any and all of the Debtors' counterparties to Executory Contracts, Unexpired Leases, and any other prepetition agreements and each of the foregoing's respective heirs, successors, assigns, trustees, executors, administrators, affiliates, officers, directors, agents, representatives, attorneys, beneficiaries, or guardians.

12.    **Vesting of Assets**.  Except as otherwise provided in the Plan or in this Confirmation Order, on the Effective Date, all property in each Estate, and any property acquired by the Debtors pursuant to the Plan shall vest in each respective Reorganized Debtor, free and

clear of all Liens, Claims, charges, or other encumbrances other than any Unimpaired Claims or

any valid liens or security interests securing such Unimpaired Claims; provided, however, that (i)

each Litigation Claim shall either (a) be treated pursuant to the terms of a Litigation Settlement,

or (b) if no such Litigation Settlement occurs with respect to such Litigation Claim, shall be

transferred to the Litigation Trust, and (ii) all unsecured claims against ROC as of the Effective

Date shall be assumed by Reorganized OpCo on the Effective Date.  On and after the Effective

Date, except as otherwise provided in the Plan, the Reorganized Debtors may operate their

businesses and may use, acquire, or dispose of property and compromise or settle any Claims,

Interests, or Causes of Action without supervision or approval by the Bankruptcy Court, and free

of any restrictions of the Bankruptcy Code or Bankruptcy Rules.  If a Litigation Trust is

established, any and all Litigation Claims that constitute Litigation Trust Assets shall be

transferred to the Litigation Trust on the Effective Date, and the Litigation Trustee shall be

entitled to enforce all rights to commence and pursue any such Litigation Claims at the Direction

of the Litigation Trust Advisory Board in accordance with the terms of the Litigation Trust

Agreement.  Pursuant to Article VI of the Plan, in connection with the vesting and transfer of the

Litigation Trust Assets, any attorney-client privilege, work-product privilege, or other privilege

or immunity attaching to any documents or communications (whether written or oral and

including, electronic information) relating to the Litigation Trust Assets (collectively, the

"Privileges") shall vest in the Litigation Trust.  The Debtors, the Reorganized Debtors, the

Consenting Creditors, and the Litigation Trustee shall take all necessary actions to effectuate the

transfer of such privileges, protections, and immunities. The Litigation Trust's, Litigation

Trustee's, and the Litigation Trust Advisory Board's receipt of the Privileges shall be without

waiver in recognition of the joint/successorship interest in prosecuting claims on behalf of the

applicable stakeholders of the Debtors' Estates. For the avoidance of doubt, upon the transfer of the Litigation Trust Assets, the Litigation Trust shall succeed to all of the Debtors' rights, title, and interest in the Litigation Trust Assets, and the Debtors shall have no further interest in or with respect to the Litigation Trust.

13.    **Authorizations to Undertake Restructuring Transactions**.  The Debtors are authorized to enter into such transactions and take such other actions as may be necessary or appropriate to effect a corporate and other Entity restructuring of their businesses, to otherwise simplify the overall corporate and other Entity structure of the Debtors, or to reincorporate or reorganize certain of the Debtors under the laws of jurisdictions other than the laws of which such Debtors currently are incorporated or formed.  In furtherance thereof, the Debtors, and the directors, officers, or managers acting on its behalf, may (a) execute and deliver appropriate agreements or other documents of merger, consolidation, restructuring, disposition, liquidation, or dissolution containing terms that are consistent with the terms of the Plan and the Restructuring Support Agreement and that satisfy the requirements of applicable state law and such other terms to which the applicable Entities may agree; (b)  execute and deliver appropriate instruments of transfer, assignment, assumption, or delegation of any asset, property, right, liability, duty, or obligation on terms consistent with the terms of the Plan and the Restructuring Support Agreement, and having such other terms to which the applicable Entities may agree; (c) file appropriate certificates or articles of merger, consolidation or dissolution pursuant to applicable state law, consistent with the terms of the Plan and the Restructuring Support Agreement; and (d) take all other actions that the applicable Entities determine to be necessary or appropriate, including making filings or recordings that may be required by applicable state law

in connection with such transactions, consistent with the terms of the Plan and Restructuring Support Agreement.

14.   **Effectiveness of All Actions**.   On the Effective Date, all actions contemplated under the Plan (including, for the avoidance of doubt, the Plan Supplement) shall be deemed authorized and approved in all respects, including:  (a) appointment of the New Boards pursuant to Article V.I of the Plan and any other managers, directors, or officers for the Reorganized Debtors identified in the Plan Supplement; (b) the issuance and distribution of the New Common Units and the New Warrants (including entry into the Warrant Agreement substantially in the form submitted with the Plan Supplement); (c) entry into the New Organizational Documents substantially in the forms submitted with the Plan Supplement; (d) entry into the New ABL Facility Loan Agreement, the New FILO Term Loan Agreement, and the New Term Loan Agreement, each substantially in the form submitted with the Plan Supplement, and the other New ABL Facility Documents, the New FILO Term Loan Facility Documents, and the New Term Loan Facility Documents (collectively, the "New Exit Facilities Documents"); (e) entry into the Litigation Trust Agreement substantially in the forms submitted with the Plan Supplement; (f) implementation of the Restructuring Transactions; and (g) all other actions contemplated under the Plan.  All matters provided for in the Plan involving the corporate or other Entity structure of the Debtors or the Reorganized Debtors, and any corporate or other Entity action required by the Debtors or the Reorganized Debtors in connection with the Plan, shall be deemed to have occurred and shall be in effect, without any requirement of further action by the security holders, directors, managers, or officers of the Debtors or the Reorganized Debtors.  On or before the Effective Date, the appropriate officers of the Debtors or the Reorganized Debtors, as applicable, shall be authorized and (as applicable) directed to issue,

execute, and deliver the agreements, documents, securities, and instruments contemplated under the Plan (or necessary or desirable to effectuate the transactions contemplated under the Plan) in the name, and on behalf, of the Reorganized Debtors, including any and all agreements, documents, securities, and instruments relating to the foregoing. The foregoing authorizations and approvals shall be effective notwithstanding any requirements under applicable non-bankruptcy law.

15.    **ABL DIP Facility**.  Any letter of credit issued under the ABL DIP Facility Loan Agreement which is undrawn as of the Effective Date (an "ABL DIP Undrawn Letter of Credit") will be (a) with the consent of the issuer thereof, deemed a letter of credit issued under the New ABL Facility Loan Agreement in an equal stated face amount (provided, that (x) all provisions governing letters of credit in the New ABL Facility Loan Agreement are in form and substance satisfactory to the issuer thereof and (y) the issuer thereof shall have no obligation after such deemed issuance to renew, amend, extend, or otherwise modify any such letter of credit so deemed issued unless otherwise agreed by such issuer), or (b) otherwise treated in a manner acceptable to the ABL DIP Agent. Upon treatment of each ABL DIP Undrawn Letter of Credit in accordance with the preceding sentence, any ABL DIP Claim corresponding to such ABL DIP Undrawn Letter of Credit shall be deemed satisfied in full (excluding fees and expenses accrued thereon in accordance with the ABL DIP Facility Loan Agreement).

16.    The Debtors' contingent reimbursement obligations or indemnity obligations under the ABL DIP Facility Loan Agreement, to the extent not indefeasibly paid in full in Cash on the Effective Date or otherwise satisfied by the Debtors in a manner acceptable to the ABL DIP Agent, any affected ABL DIP Facility Lender or any other Holder of a ABL DIP Claim, as

applicable, shall survive the Effective Date and shall not be released or discharged pursuant to this Order or the Plan, notwithstanding any provision hereof or thereof to the contrary.

17.    **New Exit Facilities**.  On the Effective Date, subject to the terms of the Plan, the Reorganized Debtors shall enter into the New ABL Facility, the New FILO Term Loan Facility, and the New Term Loan Facility (collectively, the "New Exit Facilities"), which are hereby approved (including the transactions contemplated thereby, and all actions to be taken, undertakings to be made, obligations to be incurred, fees and expenses to be paid, and indemnities to be provided by the Debtors or the Reorganized Debtors in connection therewith). Each Reorganized Debtor is authorized to: (1) finalize, execute, deliver, and take such actions as necessary to perform under, or otherwise effectuate, those documents necessary or appropriate to obtain the New Exit Facilities, including the applicable New Exit Facilities Documents substantially in the forms submitted with the Plan Supplement, and (2) grant all liens and security interests thereunder to the New ABL Agent, the New ABL Lenders, the New FILO Term Loan Agent, the New FILO Term Loan Lenders, the New Term Loan Agent, and the New Term Loan Lenders, as applicable, in accordance with the terms of the New Exit Facilities Documents, in each case without further notice to or order of the Court, act or action under applicable law, regulation, order, or rule or vote, consent, authorization, or approval of any Person (including, without limitation, creditors, stockholders, directors, members or partners of the Debtors or the Reorganized Debtors), subject to such modifications as permitted by the terms and conditions of the Plan.

18.    Until the New Exit Facilities Documents are finalized and executed, without further order or authorization of this Court, the Debtors, the Reorganized Debtors and their successors are authorized and empowered to further negotiate and make any and all

modifications to the New Exit Facilities Documents in accordance with the Plan.  Subject to the occurrence of the Effective Date, the New Exit Facilities Documents shall constitute the legal, valid, and binding obligations of the Debtors and the Reorganized Debtors, as applicable, and shall be enforceable in accordance with their respective terms.  Notwithstanding anything to the contrary in the Plan, in the event of a conflict between the Plan (including, without limitation, the Plan Supplement) and the New Exit Facilities Documents, the New Exit Facilities Documents shall control.

19.     On the Effective Date, the New ABL Facility (including any letters of credit deemed issued thereunder), the New FILO Term Loan Facility, and the New Term Loan Facility, together with any new promissory notes evidencing the obligations of the Reorganized Debtors, and all other documents, instruments, mortgages, and agreements to be entered into, delivered, or confirmed thereunder (including the New Exit Facilities Documents and all "Loan Documents" or "Financing Agreements" as defined therein), shall become effective, valid, binding, and enforceable in accordance with their terms, and each party thereto shall be bound thereby. The obligations incurred by the Reorganized Debtors pursuant to the New ABL Facility (including any letters of credit deemed issued thereunder), the New FILO Term Loan Facility, and the New Term Loan Facility, and related documents shall be secured and paid or otherwise satisfied pursuant to, and as set forth in, the New Exit Facilities Documents.

20.     The liens contemplated by and related to the New Exit Facilities and related documents are valid, binding, and enforceable liens on the collateral specified in the relevant agreements executed by the Reorganized Debtors in connection with the New Exit Facilities. The guarantees, mortgages, pledges, liens, and other security interests granted pursuant to or in connection with the New Exit Facilities are granted in good faith as an inducement to the lenders

and other secured parties thereunder to extend credit thereunder and shall be, and hereby are, deemed not to constitute a fraudulent conveyance or fraudulent transfer, shall not otherwise be subject to avoidance, recharacterization, or subordination, and the priorities of such guarantees, mortgages, pledges, liens, and other security interests shall be as set forth in the applicable intercreditor agreement(s) and other definitive documentation executed in connection with the New Exit Facilities.

21.     The Reorganized Debtors and the secured parties (and their designees and agents) under the New Exit Facilities are authorized to make all filings and recordings, and to obtain all governmental approvals and consents necessary to evidence, establish, and perfect such liens and security interests in connection with the New Exit Facilities under the provisions of the applicable state, provincial, federal, or other law (whether domestic or foreign) that would be applicable in the absence of the Plan and this Confirmation Order (it being understood that perfection shall occur automatically by virtue of the entry of this Confirmation Order, and any such filings, recordings, approvals, and consents shall not be required as a matter of law to perfect such liens and other security interests), and will thereafter cooperate to make all other filings and recordings that otherwise would be necessary under applicable law to give notice of such Liens and security interests to third parties.

22.     Notwithstanding anything to the contrary in this Confirmation Order or the Plan, the Court's retention of jurisdiction shall not govern any disputes arising or asserted under the New Exit Facilities Documents or related loan documents or financing agreements executed in connection with the New Exit Facilities or any liens, rights or remedies related thereto.

23.     Upon the Effective Date, the DIP Agent (as defined in the Final DIP Order) and the DIP Lenders (as defined in the Final DIP Order) shall be released from any and all liability,

responsibility, and/or obligation to hold, reserve for, or otherwise fund or ensure the funding of the Carve-Out (as defined in the Final DIP Order) or any other expenses included within the Carve-Out and from any obligation, responsibility or liability to the Debtors, any of the Professionals (as defined in the Final DIP Order) or any other third party to pay, fund or otherwise satisfy the fees and expenses of such Professionals.

24.    **Managers and Officers**.  As of the Effective Date, the terms of the current members of the boards of directors or managers (as applicable) of the Debtors shall expire, such directors shall be deemed to have resigned, and the initial boards of directors or managers (as applicable), including the New Boards identified in the Plan Supplement, and the officers of the Reorganized Debtors shall be appointed in accordance with the respective New Organizational Documents.  Each such director, manager, and officer shall serve from and after the Effective Date pursuant to the terms of the New Organizational Documents and other constituent documents of the Reorganized Debtors.  Pursuant to section 1129(a)(5)(A)(ii) of the Bankruptcy Code, the Court approves as consistent with the interests of holders of Claims and Interests and with public policy the selection, election and/or continuance, as the case may be, of these individuals; provided that nothing set forth herein shall prevent any of the foregoing individuals from resigning or from being removed or replaced as director or manager without further order of the Court in accordance with the terms of the Reorganized Debtors' organizational documents, as applicable.  On or immediately prior to the Effective Date or as soon thereafter as is practicable, the Reorganized Debtors will, to the extent such New Organizational Documents were included in the Plan Supplement, file its New Organizational Documents (if so required under applicable state law) with the applicable Secretaries of State and/or other applicable

authorities in its respective state, province, or country of incorporation in accordance with the corporate laws of the respective state, province, or country of incorporation or formation.

26.    **Compliance with Section 1123(a)(6) of Bankruptcy Code**.  The Plan complies with section 1123(a)(6) of the Bankruptcy Code.

26.    **Exemption from Securities Law**.  Pursuant to section 1145 of the Bankruptcy Code, the issuance and distribution of the New Common Units, the New Warrants (and the New Common Units issuable upon the exercise thereof), and the Litigation Trust Interests as contemplated by the Plan shall be exempt from, among other things, the registration requirements of section 5 of the Securities Act and any other applicable law requiring registration thereunder. In addition, under section 1145 of the Bankruptcy Code, the New Common Units, the New Warrants (and the New Common Units issuable upon the exercise thereof), and the Litigation Trust Interests will be freely tradable in the U.S. by the recipients thereof, subject to the provisions of section 1145(b)(1) of the Bankruptcy Code relating to the definition of an underwriter in section 2(a)(11) of the Securities Act, and compliance with applicable securities laws and any rules and regulations of the Securities and Exchange Commission, if any, applicable at the time of any future transfer of such securities or instruments and subject to any restrictions in the New Organizational Documents, the Warrant Agreement, and the Litigation Trust Agreement, as applicable; *provided*, *however*, that notwithstanding anything to the contrary herein, the transfer of the New Common Units, the New Warrants, and the Litigation Trust Interests will be prohibited to the extent such transfer would subject the Reorganized Debtors or the Litigation Trust to the registration and reporting requirements of the Securities Act and the Securities Exchange Act of 1934, as amended.

27.    **Cancellation of Certain Loans, Securities and Agreements**.    Except as otherwise provided in the Plan (including with respect to Unimpaired Claims), on the Effective Date: (1) the Term/ROC DIP Credit Agreement, the ABL DIP Facility Loan Agreement, the ABL Facility, the Term Loan Agreement, the Third Lien Notes Indenture, the Interests in ROC, any intercompany notes memorializing or evidencing the Settled Intercompany Claims, and any other certificate, equity security, share, note, purchase right, option, warrant, or other instrument or document directly or indirectly evidencing or creating any indebtedness or obligation of, or ownership interest in, the Debtors giving rise to any Claim or Interest (except such certificates, notes, or other instruments or documents evidencing indebtedness or obligation of, or ownership interest in, the Debtors that are reinstated pursuant to the Plan), shall be deemed cancelled, surrendered, and discharged as to the Debtors without any need for further action or approval of the Bankruptcy Court or any holder thereof or any other person or entity, and the Reorganized Debtors shall not have any continuing obligations thereunder or in any way related thereto; and (2) the obligations of the Debtors pursuant, relating, or pertaining to any agreements, indentures, certificates of designation, bylaws or certificate or articles of incorporation, or similar documents governing the shares, certificates, notes, purchase rights, options, warrants, or other instruments or documents evidencing or creating any indebtedness or obligation of, or ownership interest in, the Debtors (except such agreements, certificates, notes or other instruments evidencing indebtedness or obligation of or ownership interest in the Debtors that are specifically reinstated pursuant to the Plan) shall be deemed satisfied in full, released, and discharged without any need for further action or approval of the Bankruptcy Court or any holder thereof or any other person or entity; provided, however, that notwithstanding Confirmation or Consummation, any such agreement that governs the rights of the holder of a Claim shall continue in effect solely for

purposes of (a) allowing holders to receive distributions under the Plan, (b) with respect to the ABL Facility, as necessary to enforce the terms of the ABL Payoff Letter, including but not limited to the Surviving Obligations (as defined in the ABL Payoff Letter), (c) with respect to the Third Lien Notes Indenture, as necessary to (i) permit the Third Lien Notes Indenture Trustee to take such action as contemplated by the Plan and Confirmation Order, (ii) enforce the rights, Claims and interests of the Third Lien Notes Indenture Trustee vis a vis the Third Lien Noteholders, (iii) preserve any rights of the Third Lien Notes Indenture Trustee as against any money or property distributable to the Third Lien Noteholders, including any priority in respect of payment and the right to exercise any charging lien, provided further, that except with respect to its rights and obligations with respect to this Plan and the Confirmation Order, the Third Lien Notes Indenture Trustee and its agents shall be relieved of all further duties and responsibilities related to the Third Lien Notes Indenture, and (d) solely with respect to the Term Loan Agreement, as necessary to (i) enforce the rights, Claims and interests of the Term Loan Agent and any predecessor thereof vis-a-vis the Secured Parties (as defined in the Term Loan Agreement) and any parties other than the Debtors or the Reorganized Debtors, (ii) preserve any rights of the Term Loan Agent and any predecessor thereof as against any money or property distributable to holders of Term Loan Claims, including any priority in respect of payment and the right to exercise any charging lien, and (iii) enforce the terms of the OpCo Bridge Payoff Letter, including but not limited to the Surviving Obligations (as defined in the OpCo Bridge Payoff Letter); provided further, that the preceding proviso shall not affect the discharge of Claims or Interests pursuant to the Bankruptcy Code, this Confirmation Order, or the Plan, or result in any expense or liability to the Reorganized Debtors. Except for the foregoing, the Term Loan Agent and its respective agents shall be relieved of all further duties and responsibilities

related to the Financing Agreements (as defined in the Term Loan Agreement) and the Plan, except with respect to such other rights of the Term Loan Agent that, pursuant to the Term Loan Agreement, survive the termination of the Financing Agreements. Subsequent to the performance by the Term Loan Agent of its obligations pursuant to the Plan, the Term Loan Agent and its agents shall be relieved of all further duties and responsibilities related to the Financing Agreements.

28.    **Release of Liens**.  Except as otherwise expressly provided in the Plan (including with respect to Unimpaired Claims), or in any contract, instrument, release, or other agreement or document created pursuant to the Plan, including the New ABL Facility Documents, New Term Loan Facility Documents, and the New FILO Term Loan Facility Documents, on the Effective Date, upon (1) the applicable distributions made pursuant to the Plan, and (2) the effectiveness of the New ABL Facility Documents, New Term Loan Facility Documents, and the New FILO Term Loan Facility Documents, all mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the Estates shall be fully released and discharged, and all of the right, title, and interest of any holder of such mortgages, deeds of trust, Liens, pledges, or other security interests shall revert to the Reorganized Debtors and each of their successors and assigns.  For the avoidance of doubt, any release of a prepetition Lien pursuant to this paragraph shall be automatic, without any further action or filings on the part of the Debtors or the Reorganized Debtors; provided, however, that a certified copy of this Confirmation Order may be filed or recorded in addition to or in lieu of any document or instrument necessary to confirm any such release.

29.    Notwithstanding the entry of this Confirmation Order, from the Confirmation Date through the Effective Date, all of the claims, liens, interests, rights, priorities, protections

and remedies afforded to the DIP Agent (as defined in the Final DIP Order) and DIP Lenders (as defined in the Final DIP Order) in the Final DIP Order shall remain in full force and effect, and shall constitute, and continue to constitute, the legal, valid, binding and enforceable obligations of the Debtors, which shall not be impaired, prejudiced or modified in any way at any time prior to the Effective Date.

30.    **General Settlement of Claims and Interests**.  Pursuant to section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019, and in consideration for the classification, distributions, releases, and other benefits provided under the Plan, on the Effective Date, the provisions of the Plan shall constitute a good faith compromise and settlement of all Claims and Interests and controversies resolved pursuant to the Plan.  All distributions made to holders of Allowed Claims in any Class and Interests in accordance with the Plan are intended to be, and shall be, final.

31.    **COAC Agreement**.  Article V.I.3 of the Plan and any other provisions or conditions related thereto that address the proposed amended of the COAC Agreement are hereby waived in accordance with the terms and conditions of the *Agreed Order Resolving Cerberus Operations and Advisory Company, LLC's (1) Limited Objection to Plan Confirmation and (2) Motion for Relief from the Automatic Stay to Terminate Services Agreement* [Docket No. 233], which is hereby incorporated into and made a part of this Confirmation Order as though fully set forth herein.  Any and all Claims of Cerberus, COAC, or each of their respective affiliates are hereby Disputed Claims as defined in the Plan.

32.    **Preservation of Causes of Action**.  In accordance with section 1123(b) of the Bankruptcy Code, but subject in all respects to Articles VI and IX of the Plan, each Debtor shall retain all rights to commence and pursue, as appropriate, any and all Litigation Claims that such

Debtor or its Estate may hold whether arising before or after the Petition Date, including any actions specifically identified in the Plan Supplement, and such rights to commence, prosecute, settle, or assert as a defense such Litigation Claims shall be preserved notwithstanding the occurrence of the Effective Date.

33.    **Assumption or Rejection of Contracts and Leases**.  On the Effective Date, except as otherwise ordered by the Court or provided in the Plan, all Executory Contracts and Unexpired Leases of the Debtors, including that certain Employment Agreement dated as of August 15, 2015, by and between Remington Outdoor Company, Inc. and Stephen P. Jackson, Jr. and that certain Employment Agreement dated as of October 19, 2017, by and between Remington Outdoor Company, Inc. and Anthony A. Acitelli (collectively, the "Existing Employment Agreements"), shall be deemed assumed by the applicable Debtor counterparty in accordance with the provisions and requirements of sections 365 and 1123 of the Bankruptcy Code, and such assumptions are hereby approved.  Notwithstanding anything to the contrary herein, on the Effective Date, all Executory Contracts and Unexpired Leases to which ROC or FGI Holding is a party shall be deemed assumed by Reorganized OpCo; provided, that all federal, state, or local government licenses, permits, and similar rights or privileges held by ROC shall be deemed assumed on the Effective Date by Reorganized ROC.  All indemnification contracts and employment contracts (except for the Existing Employment Agreements) to which one or more Debtors is a party shall be rejected to the extent permitted by law unless expressly assumed prior to the Effective Date or pursuant to the terms of this Plan.  Each Executory Contract and Unexpired Lease assumed pursuant to the Plan and this Confirmation Order, which has not been assigned to a third party prior to the Confirmation Date, shall revest in, and be fully

enforceable by, Reorganized OpCo in accordance with its terms, except as such terms are modified by the provisions of the Plan or otherwise ordered by the Court.

34.     Any disputes between the Debtors or the Reorganized Debtors, on the one hand, and the counterparty to any Executory Contract and Unexpired Lease regarding cure amounts or "adequate assurance of future performance" (within the meaning of Bankruptcy Code section 365) shall be governed by the procedures set forth in Article VII.B of the Plan; *provided*, *however*, for the avoidance of doubt, any undisputed ordinary course payments made to such counterparty pursuant to the Bankruptcy Court's orders (including, but not limited to, any "first day" orders entered by this Bankruptcy Court) or as a result of the unimpairment of Claims under the Plan shall be deemed ordinary course payments of the amounts that become due under such Executory Contract or Unexpired Lease and shall not be deemed cure payments that require the parties to submit to any particular procedure under the Plan.

35.     **Authorization to Consummate**.  The Debtors are authorized to consummate the Plan at any time after the entry of this Confirmation Order, subject to satisfaction or waiver (by the required parties as set forth in the Plan) of the conditions precedent to the Effective Date set forth in Article X.B of the Plan.

36.     **General Administrative Expenses**.  Each holder of an Allowed General Administrative Expense, to the extent such Allowed General Administrative Expense has not already been paid during the Chapter 11 Cases and without any further action by such holder, shall receive, in full satisfaction of its General Administrative Expense, Cash equal to the Allowed amount of such General Administrative Expense on the Effective Date (or, if payment is not then due, then in the applicable Debtor's ordinary course of business), unless otherwise agreed by the holder of such General Administrative Expense and the applicable Debtor.

37.     **Professional Fees**.  All final requests for payment of Professional Fees incurred prior to the Effective Date must be filed with the Bankruptcy Court and served on the Reorganized Debtors no later than forty-five (45) days after the Effective Date, unless the Reorganized Debtors agree otherwise in writing.  Objections to Professional Fees must be filed with the Bankruptcy Court and served on the Reorganized Debtors and the applicable Professional no later than seventy-five (75) days after the Effective Date.  After notice and a hearing in accordance with the procedures established by the Bankruptcy Code and any prior orders of the Bankruptcy Court in the Chapter 11 Cases, the Allowed amounts of such Professional Fees shall be determined by the Bankruptcy Court and, once approved by the Bankruptcy Court, shall be promptly paid in full in Cash from the Professional Fees Escrow Account; provided, however, that if the funds in the Professional Fees Escrow Account are insufficient to pay the full Allowed amounts of the Professional Fees, the Reorganized Debtors shall promptly pay any remaining Allowed amounts from its Cash on hand.  For the avoidance of doubt, in no circumstance shall ROC funds be contributed to the Professional Fees Escrow Account or used to pay any Professional Fees except as otherwise provided pursuant to the Plan.

38.     For the avoidance of doubt, the immediately preceding paragraph shall not affect any professional-service Entity that is permitted to receive, and the Debtors are permitted to pay without seeking further authority from the Bankruptcy Court, compensation for services and reimbursement of expenses in the ordinary course of the Debtors' businesses (and in accordance with any relevant prior order of the Bankruptcy Court), which payments may continue notwithstanding the occurrence of Confirmation

39.     **Discharge**.  Pursuant to section 1141(d) of the Bankruptcy Code, and except as otherwise specifically provided in the Plan, this Confirmation Order, or in any contract,

instrument, or other agreement or document created pursuant to the Plan (including, for the avoidance of doubt, the Plan Supplement), the distributions, rights, and treatment that are provided in the Plan shall be in complete satisfaction, discharge, and release, effective as of the Effective Date, of Claims (including (i) the Settled Intercompany Claims and (ii) any Intercompany Claims resolved or compromised after the Effective Date by the Reorganized Debtors), Interests, and Causes of Action of any nature whatsoever, including any interest accrued on Claims from and after the Petition Date, whether known or unknown, against, liabilities of, Liens on, obligations of, rights against, and Interests in the Debtors or any of their assets or properties, regardless of whether any property shall have been distributed or retained pursuant to the Plan on account of such Claims and Interests, including demands, liabilities, and Causes of Action that arose prior to the Effective Date, any contingent or non-contingent liability on account of representations or warranties issued on or before the Effective Date, and all debts of the kind specified in section 502(g), (h), or (i) of the Bankruptcy Code. This Confirmation Order shall be a judicial determination of the discharge of all Claims and Interests as set forth above subject to the occurrence of the Effective Date. Notwithstanding anything to the contrary in the Plan or this Confirmation Order, (i) the discharge of all Claims and Interests as set forth above shall not apply to any Litigation Claim unless such Litigation Claim is expressly waived, relinquished, exculpated, released, compromised, or settled in the Plan, the Litigation Settlement, or a Bankruptcy Court order, and (ii) (a) each Administrative Expense and any Claim or Interest arising prior to the Effective Date in Classes 1, 2, 3, 6, (including Claims for rejection damages pursuant to section 365 of the Bankruptcy Code), 7, or 10 of the Plan shall not be deemed settled, satisfied, resolved, released, discharged, barred or enjoined by any provision of the Plan (including, for the avoidance of doubt, Articles IX.D.1 and IX.D.2 of the Plan), and (b) the

Debtors and the Reorganized Debtors shall retain all defenses, counterclaims, rights to setoff, and rights to recoupment, if any, as to the foregoing Claims.

40.    **Releases, Injunction, Exculpation, and Related Provisions under the Plan**. The releases, injunctions, and related provisions set forth in Article IX of the Plan are hereby approved and authorized in their entirety. Only to the fullest extent permitted under Bankruptcy Code Section 1125(e), the exculpations and related provisions set forth in Article IX of the Plan are hereby approved and authorized in their entirety. Except as set forth in the Plan, as of the Effective Date, any and all Causes of Action, whether under the Bankruptcy Code or otherwise under applicable non-bankruptcy law, that may exist between the Debtors and any Released Party (except for Causes of Action held by any employee, other than a director and/or officer acting in such capacity, of the Debtors or any Released Party) shall be deemed settled, compromised, and released as set forth in the Plan; *provided, however,* that the foregoing shall not apply to any Litigation Claims in the event a Litigation Trust is established. The Court hereby authorizes and approves the releases by all Entities of all such contractual, legal, and equitable subordination rights and Causes of Action that are satisfied, compromised, and settled pursuant to the Plan. Nothing in Article IX.A of the Plan shall compromise or settle, in any way whatsoever, any Causes of Action that the Debtors or the Reorganized Debtors, as applicable, may have against any Entity that is not a Released Party. For the avoidance of doubt, the term "employee," as used in this paragraph, does not include any officers and/or directors to the extent an employee acts or acted in such capacity."

41.    **Compliance with Tax Requirements**. In connection with the Plan, to the extent applicable, the Reorganized Debtors shall comply with all tax withholding and reporting requirements imposed on them by any Governmental Unit, and all distributions pursuant to the

Plan shall be subject to such withholding and reporting requirements. Notwithstanding any provision in the Plan to the contrary, the Reorganized Debtors and the Disbursing Agent shall be authorized to take all actions necessary or appropriate to comply with such withholding and reporting requirements, including withholding distributions pending receipt of information necessary to facilitate such distributions or establishing any other mechanisms they believe are reasonable and appropriate. The Reorganized Debtors reserves the right to allocate all distributions made under the Plan in compliance with all applicable wage garnishments, alimony, child support and other spousal awards, liens, and encumbrances.

42.    **Section 1146 Exemption**. Pursuant to section 1146 of the Bankruptcy Code, any transfers of property pursuant hereto shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, stamp act, real estate transfer tax, mortgage recording tax, or other similar tax or governmental assessment, and upon entry of this Confirmation Order, the appropriate state or local governmental officials or agents and any third party shall forgo the collection of any such tax, recordation fee, or governmental assessment and accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax, recordation fee, or assessment.

43.    **Documents, Mortgages, and Instruments**. Each federal, state, commonwealth, local, foreign, or other governmental agency is hereby authorized to accept any and all documents, mortgages, and instruments necessary or appropriate to effectuate, implement, or consummate the transactions contemplated by the Plan and this Confirmation Order.

44.    **Reversal/Stay/Modification/Vacatur of Confirmation Order**. Except as otherwise provided in this Confirmation Order, if any or all of the provisions of this Confirmation Order are hereafter reversed, modified, vacated, or stayed by subsequent order of

46

the Court, or any other court, such reversal, stay, modification, or vacatur shall not affect the validity or enforceability of any act, obligation, indebtedness, liability, priority, or lien incurred or undertaken by the Debtors or the Reorganized Debtors, as applicable, prior to the effective date of any such reversal, stay, modification, or vacatur, including, without limitation, the validity of any obligation, indebtedness, or liability incurred by the Debtors or the Reorganized Debtors pursuant to any of the New Exit Facilities.  Notwithstanding any such reversal, stay, modification, or vacatur of this Confirmation Order, any such act or obligation incurred or undertaken pursuant to, or in reliance on, this Confirmation Order prior to the effective date of such reversal, stay, modification, or vacatur shall be governed in all respects by the provisions of this Confirmation Order and the Plan or any amendments or modifications thereto.

45. **Continued Effect of Stays and Injunction Until Effective Date**.  Unless otherwise provided in the Plan or in this Confirmation Order, all injunctions or stays in effect in the Chapter 11 Cases pursuant to sections 105 or 362 of the Bankruptcy Code or any order of the Bankruptcy Court, and existing on the Confirmation Date (excluding any injunctions or stays contained in the Plan or this Confirmation Order) shall remain in full force and effect until the Effective Date.  All injunctions or stays contained in the Plan or this Confirmation Order shall remain in full force and effect in accordance with their terms.

46. **Retention of Jurisdiction**.  The Court retains jurisdiction over the matters arising out of, or related to, these chapter 11 cases and the Plan as set forth in Article XII of the Plan.

47. **Nonseverability of Plan Provisions upon Confirmation**.  Each term and provision of the Plan is:  (a) valid and enforceable pursuant to its terms; (b) integral to the Plan and may not be deleted or modified without consent of the Debtors, and subject to the terms and conditions of the Plan, the Requisite Consenting Creditors, the Term Loan Agent, the Term/ROC

DIP Agent, the ABL DIP Agent, the New FILO Term Loan Lenders, and the New ABL Required Lenders; and (c) nonseverable and mutually dependent.

48.     **Modifications**.  Except as otherwise specifically provided in the Plan, and subject to the terms of the Restructuring Support Agreement, the Debtors reserve the right to modify the Plan, with the consent of the Requisite Consenting Creditors, the Term Loan Agent, the Term/ROC DIP Agent, the ABL DIP Agent, the New FILO Term Loan Lenders, and the New ABL Required Lenders, which consent may be withheld in their sole and absolute discretion, whether such modification is material or immaterial, and seek Confirmation consistent with the Bankruptcy Code. Subject to certain restrictions and requirements set forth in section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019 and those restrictions on modifications set forth in the Plan and the terms of the Restructuring Support Agreement, and subject to the consent of the Requisite Consenting Creditors, the ABL DIP Agent, the New FILO Term Loan Lenders, and the New ABL Required Lenders, which consent may be withheld in their sole and absolute discretion, each Debtor expressly reserves its respective rights to revoke, withdraw, alter, amend, or modify the Plan with respect to such Debtor, one or more times, after Confirmation, to the extent necessary to carry out the purposes and intent of the Plan and the Restructuring Support Agreement, including by structuring the Plan, the Restructuring, and the Restructuring Transaction in a manner that preserves favorable tax attributes; *provided, however*, that any such amendment or modification shall not cause Class 6 General Unsecured Claims to be Impaired. Each Debtor may, to the extent necessary, initiate proceedings in the Bankruptcy Court to so alter, amend, or modify the Plan, or remedy any defect or omission, or reconcile any inconsistencies in the Plan, the Disclosure Statement, or the Confirmation Order, in such matters as may be necessary to carry out the purposes and intent of the Plan and the Restructuring

Support Agreement. Any such modification or supplement shall be considered a modification of the Plan and shall be made in accordance with Article XI of the Plan.

49.     **Distributions to Holders of Allowed Third Lien Notes Claims**.    All distributions to holders of Allowed Third Lien Notes Claims shall be governed by the Third Lien Notes Indenture, including, but not limited to, the provisions therein for the payment of the fees and expenses of the Third Lien Notes Indenture Trustee, and shall be made to each holder of an Allowed Third Lien Notes Claim, or such holder's authorized designee, for purposes of distributions to be made hereunder.

50.     **Governing Law**.    Unless federal law (including the Bankruptcy Code and Bankruptcy Rules) is applicable, and unless specifically stated otherwise, the laws of the State of Delaware, without giving effect to the principles of conflict of laws, shall govern the rights, obligations, construction, and implementation of the Plan and any agreements, documents, instruments, or contracts executed or entered into in connection with the Plan (except as otherwise set forth in those agreements, in which case the governing law of such agreement shall control); provided, however, that corporate or entity governance matters relating to the Debtors or the Reorganized Debtors shall be governed by the laws of the state of incorporation or organization of the relevant Debtor or the Reorganized Debtors, as applicable.

51.     **Applicable Non-Bankruptcy Law**.    Pursuant to sections 1123(a) and 1142(a) of the Bankruptcy Code, the provisions of this Confirmation Order, the Plan, and related documents or any amendments or modifications thereto shall apply and be enforceable notwithstanding any otherwise applicable non-bankruptcy law.

52.     **Governmental Approvals Not Required**.    Except as otherwise stated in the Plan, this Confirmation Order shall constitute all approvals and consents required, if any, by the laws,

rules, or regulations of any state or other governmental authority with respect to the implementation or consummation of the Plan and Disclosure Statement, any documents, instruments, or agreements, and any amendments or modifications thereto, and any other acts referred to in, or contemplated by, the Plan and the Disclosure Statement.

53.     **Reservation of Rights in Favor of Governmental Units**. Notwithstanding any provision in the Plan, this Confirmation Order (but subject to paragraph 54 of this Confirmation Order) or the related Plan documents (together with the Plan and this Confirmation Order, the "Plan Documents"), nothing discharges or releases the Debtors, the Reorganized Debtors or any non-debtor from any claim, liability or cause of action of the United States or any State, or impairs the ability of the United States or any State to pursue any claim, liability, defense, right or cause of action against the Debtors, the Reorganized Debtors or any non-debtor. Contracts, leases, covenants, guaranties, indemnifications, operating rights agreements or other interests or agreements with the United States or any State shall be, subject to any applicable legal or equitable rights or defenses of the Debtors or the Reorganized Debtors under applicable non-bankruptcy law, paid, treated, determined and administered in the ordinary course of business as if the Debtors' bankruptcy cases were never filed, and the Debtors and the Reorganized Debtors shall comply with all applicable non-bankruptcy law. All claims, liabilities, causes of action, or defenses of or to the United States or any State shall survive the Chapter 11 Cases as if they had not been commenced and be determined in the ordinary course of business, including in the manner and by the administrative or judicial tribunals in which such rights, defenses, claims, liabilities, or causes of action would have been resolved or adjudicated if the Chapter 11 Cases had not been commenced; *provided*, that nothing in the Plan or this Confirmation Order shall alter any legal or equitable rights or defenses of the Debtors or the Reorganized Debtors under

nonbankruptcy law with respect to any such claim, liability or cause of action. Without limiting the foregoing, for the avoidance of doubt: (a) the United States and any State shall not be required to file any proofs of claim in the Chapter 11 Cases for any claim, liability or cause of action; and (b) nothing in the Plan Documents shall (i) affect or impair the exercise of the United States' or any State's police and regulatory powers against the Debtors, the Reorganized Debtors or any non-debtor; (ii) be interpreted to set cure amounts or to require the United States or any State to novate or otherwise consent to the transfer of any federal or state contracts, leases, guaranties, indemnifications, grants, agreements or interests; (iii) affect or impair the United States' or any State's rights and defenses of setoff and recoupment, or to assert setoff or recoupment against the Debtors or the Reorganized Debtors and such rights and defenses are expressly preserved; or (iv) constitute an approval or consent by the United States without compliance with all applicable legal requirements and approvals under non-bankruptcy law.

54.     **Securities and Exchange Commission**.  Except for the Court's findings of fact, conclusions of law and rulings in respect of the prepetition and postpetition solicitation of the Plan, nothing in this Plan or the Order is intended to affect the police or regulatory activities of the U.S. Securities and Exchange Commission (the "SEC") or release any non-Debtor from liability in connection with any legal action brought by the SEC.

55.     **Filing and Recording**.  This Confirmation Order is and shall be binding upon and shall govern the acts of all persons or entities including, without limitation, all filing agents, filing officers, title agents, title companies, recorders of mortgage, recorders of deeds, registrars of deeds, administrative agencies, governmental departments, secretaries of state, federal, state, and local officials, and all other persons and entities who may be required, by operation of law,

the duties of their office, or contract, to accept, file, register, or otherwise record or release any document or instrument.

56.    **Notice of Confirmation Order**.   In accordance with Bankruptcy Rules 2002 and 3020(c), the Debtors shall serve notice of the entry of this Confirmation Order, substantially in the form attached hereto as **Exhibit B**, to all parties who hold a Claim or Interest in these chapter 11 cases, including those parties who have requested service of papers under Bankruptcy Rule 2002 and the Office of the United States Trustee within ten (10) business days after entry of this Confirmation Order.   The Debtors shall also publish notice of Confirmation once in the national edition of *USA Today (National Edition)* or other nationally-circulated newspaper. Mailing and publication of the notice of Confirmation Order in the time and manner set forth in this paragraph shall be deemed good and sufficient notice of entry of this Confirmation Order and no further notice is necessary.

57.    **Substantial Consummation**.   On the Effective Date, the Plan shall be deemed to be substantially consummated under sections 1101 and 1127 of the Bankruptcy Code.

58.    **Effect of Non-Occurrence of Effective Date**.   If the Effective Date does not occur within ninety (90) days of the Confirmation Date (or such other extended deadline as may be ordered by the Bankruptcy Court), the Plan shall be null and void in all respects, and nothing contained in the Plan or the Disclosure Statement shall: (1) constitute a waiver or release of any claims by the Debtors, any holders of Claims or Interests (including the Consenting Creditors and the ABL Parties), or any other Entity; (2) prejudice in any manner the rights of the Debtors, any holders of Claims or Interests (including the Consenting Creditors and the ABL Parties), or any other Entity; or (3) constitute an admission, acknowledgment, offer, or undertaking by the Debtors, any holders of Claims or Interests (including the Consenting Creditors and the ABL

Parties), or any other Entity, in any respect.  For the avoidance of doubt, except as provided in the Restructuring Support Agreement, nothing in the Plan shall be construed as requiring termination or avoidance of the Restructuring Support Agreement upon non-occurrence of the Effective Date (subject, in all respects, to any consent, termination, or other rights of the Consenting Creditors under the Restructuring Support Agreement) or as otherwise preventing the Restructuring Support Agreement from being effective in accordance with its terms.

59.    **References to Plan Provisions**.  References to Articles of the Plan are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of the Plan except as specifically provided herein.  The failure to specifically include or to refer to any particular article, section, or provision of the Plan or any related document in this Confirmation Order shall not diminish or impair the effectiveness of such article, section, or provision, it being the intent of the Bankruptcy Court that the Plan and any related documents be confirmed in their entirety.

60.    **Headings**.  Headings utilized herein are for convenience and reference only, and shall not constitute a part of the Plan or this Confirmation Order for any other purpose.

61.    **Effect of Conflict between Plan and Confirmation Order**.  If there is any inconsistency between the terms of the Plan or the Plan Supplement and the terms of this Confirmation Order, the terms of this Confirmation Order shall govern and control.

62.    **No Stay of Confirmation**. The requirements under Bankruptcy Rule 3020(e) that an order confirming a plan is stayed until the expiration of 14 days after entry of the order are hereby waived. This Confirmation Order shall take effect immediately and shall not be stayed pursuant to Bankruptcy Rules 3020(e), 6004(g), 6006(d), 7062, or otherwise.

63.   **No Waiver**.  The failure to specifically include any particular provision of the Plan in this Confirmation Order will not diminish the effectiveness of such provision nor constitute a waiver thereof, it being the intent of the Court that the Plan is confirmed in its entirety and incorporated herein by this reference.

64.   **Sports Molding Inc. d/b/a SMI Molding Inc.**  Notwithstanding anything to the contrary in the Disclosure Statement, the Plan, this Confirmation Order, any amendment or supplement to any of the foregoing items, or in any document executed or delivered pursuant to or related to the Plan or this Confirmation Order including, without limitation, any Plan Supplement, exhibit, or trust agreement, all defenses of Sports Molding, Inc. (d/b/a SMI Molding, Inc.) to any Cause of Action asserted by a Released Party are hereby preserved and are not released, discharged, enjoined or exculpated.

65.   **Special Provision Governing Unimpaired Claims**.  Except as otherwise provided in the Plan, nothing under the Plan shall affect (i) the Debtors' rights and defenses in respect of any Unimpaired Claims, including all rights in respect of legal and equitable defenses to, or setoffs or recoupment against, any such Unimpaired Claims or (ii) the rights and defenses of any holder of Unimpaired Claims in respect of its Unimpaired Claims. Any disputes between the Debtors or the Reorganized Debtors, on the one hand, and the holder of an Unimpaired Claim, on the other hand, shall be adjudicated in the ordinary course of dealing between such parties (including, if necessary, in a court of competent jurisdiction other than the Bankruptcy Court), subject to the rights of such parties as set forth in Article V.O.1 of the Plan to have such disputes adjudicated in the Bankruptcy Court.

66.    **Final Order**.  This Confirmation Order is a Final Order.


Dated: May 4, 2018
Wilmington, Delaware

THE HONORABLE BRENDAN L. SHANNON
UNITED STATES BANKRUPTCY JUDGE